GEORGE E. THOMAS ET AL V. SOUTHWESTERN SETTLE-
MENT & DEVELOPMENT COMPANY ET AL.

No. 7190. Decided January 11, 1939.
Rehearing overruled February 15, 1939.
(123 S. W., 2d Series, 290.)

*O. M. Lord, A. M. Huffman* and *Orgain, Carroll & Bell,* all of Beaumont, for appellants.

A deed to a specific part of the common estate made by a cotenant to a third party is not void, but is binding and passes title as between the parties and can be attacked only by the nonconveying cotenants and then only to the extent that said ex parte partition is unfair to the nonconveying cotenants. Maverick v. Burney, 88 Texas 560, 32 S. W. 512; Harrison Oil Company v. Sherman, 66 S. W. (2d) 701; Right of Way Oil Co. v. Gladys City Oil, Gas & Mfg. Co., 106 Texas 94, 157 S. W. 737.

On the question of limitations appellants cite: Elliott v. Nelson, 113 Texas 62, 251 S. W. 501; Porter v. Miller, 76 Texas 593, 14 S. W. 334; 2 Tex. Jur. 243.

*Williams, Lee Sears & Kennerly, Geo. D. Sears, J. J. Lee, McDonald Meachum, Fred L. Williams, W. J. Williamson, E. J. Fountain, Andrews, Kelley, Kruth & Campbell,* all of Houston, for appellees.

The doctrine of equitable partition has no application to this case for the reason there is no authority in law or equity to permit appellants to wait for twenty years to invoke the equity powers of a court. Neither has it any application because there was no intention of partition on the part of appellees, and because of the nature of the estate involved no actual partition, in the ordinarily accepted sense of that term, could have been or was made by the conveyances in question, and, because neither at the time of the conveyance nor at the time of the trial the properties were not of the same kind and character nor of the same value, acre for acre. Pickens v. Glasscock, 78 S. W. (2d) 257; Stanolind Oil & Gas Co. v. Simpson-Fell Oil Company, 85 S. W. (2d) 325.

MR. PRESIDING JUDGE SMEDLEY of the Commission of Appeals delivered the opinion for the court.

The Court of Civil Appeals at Beaumont has certified to the Supreme Court two questions of law. The material facts set out in the certificate are in substance as follows:

The subject matter of the controversy is 4328 acres of land

in Hardin County, being all of the Eduardo Ariola League except 100 acres of land in the form of a square in the northwest corner of the league. In the year 1889 G. W. M. Duck was the owner through recorded deeds of an undivided one-fifth interest in the Ariola League. By deed dated December 16, 1907, duly recorded, J. U. Vincent, purporting to act for himself and as attorney in fact for others, the heirs of G. W. M. Duck, undertook to convey to the receiver of Houston Oil Company of Texas all of the Duck one-fifth interest in the league of land. As to three of the seven heirs the deed was ineffective because there appear to be no powers of attorney from them to Vincent, the result being that the receiver of the Houston Oil Company of Texas did not acquire by the deed three-sevenths of the one-fifth interest, or three-thirty-fifths of the entire interest, in the land involved herein. Appellants, the plaintiffs in the trial court, are the record owners of the said three-thirty-fifths interest. Houston Oil Company of Texas, through Vincent's deed and through various other deeds and judgments, acquired title to the land in controversy herein except the said three-thirty-fifths undivided interest.

On August 4, 1916, appellee Houston Oil Company of Texas conveyed to appellee Southwestern Settlement & Development Company, together with many other tracts of land, the 4328 acres of land in the Ariola League, being the land in controversy herein. This deed purported to convey not merely an undivided interest but the entire interest in the land. It expressly excepted and reserved all oil and gas on, in or under the land, with rights of ingress and egress and other use of the surface necessary or convenient in taking, using or removing oil and gas.

On November 15, 1916, Houston Oil Company of Texas, joined by Southwestern Settlement & Development Company, sold and conveyed to appellee Republic Production Company an undivided one-half interest in the oil and gas and other minerals in the land, with rights of ingress and egress and other use of the surface. The deed recited that Houston Oil Company of Texas was the owner of the 4328 acres of land in the Ariola League and other land and that it had conveyed the same to Southwestern Settlement & Development Company with the exception and reservation of the oil and gas above set out. It further recited that the grantors, not collectively but severally, being the sole owners of the oil, gas and other minerals in the lands, in order to advance the development of the same conveyed to the grantees a full undivided

one-half interest in and to all the oil, gas and other minerals, thereby making or seeking to make more valuable the other one-half of the minerals. It was further stipulated in the deed that until and unless there should be a separate valuation and taxation of the mineral rights, Houston Oil Company of Texas and Southwestern Settlement & Development Company should render and pay all taxes, ignoring the mineral rights, and that after separate valuation, if such should arise, each party would pay its taxes upon the mineral rights.

On May 27, 1921, Houston Oil Company of Texas and Southwestern Settlement & Development Company executed a deed conveying to appellee Kirby Lumber Company all the pine timber eight inches or more in diameter and all hardwood six inches or more in diameter on the land in controversy.

No other conveyances were thereafter made by any of appellees. In the year 1932 Republic Production Company entered upon the land and pursued drilling operations which resulted in the production of oil in August, 1932, its operations being carried on under the contract between it and Houston Oil Company of Texas and Southwestern Settlement & Development Company whereby it acquired its interest in the oil and gas, which contract provided that the cost of development should be shared equally by the two oil companies and the profits divided equally between them. The said two companies have expended about $489,000.00 in the development of the land for oil and in the production of oil therefrom. Up to the present time about sixty acres of the land involved herein has been proven to be oil producing and it had an estimated value at the time of the trial of $300,000.00. The remainder of the land had an estimated value at the time of the trial of $100.00 per acre. The possibilities of discovering additional oil on the land involved herein have not been entirely exhausted. The field is of the salt dome type, in which kind of fields oil is not migratory unless disturbed by drilling, and as far as can be told by scientific methods there is the same amount of oil there now as in the years 1916 and 1920, less what has been removed by Republic Production Company and Houston Oil Company of Texas.

In 1916, when the deeds to Southwestern Settlement & Development Company and Republic Production Company were executed by Houston Oil Company of Texas, the oil and gas in the land had nothing more than a nominal value, and in any event the one-half interest in the oil and gas reserved by Houston Oil Company of Texas was at that time of less mar-

ket value than appellant's three-thirty-fifths interest in the fee estate. At that time the land was valuable principally for the merchantable timber thereon which would cut twenty-five hundred feet per acre and was of the market value of $5.00 per thousand feet. The land as cut-over land had at that time a market value of about $3.00 per acre.

From the time when J. U. Vincent executed in 1907 the deed purporting to convey to the receiver of Houston Oil Company of all of the G. W. M. Duck one-fifth interest in the land until a short time before the filing of this suit there was no active assertion of ownership of the land by appellants or by anyone under whom they claim. The deeds under which appellees claim title were executed by heirs of the original grantees or those claiming under them and purport to convey to appellees and those through whom they claim the entire fee title to the land herein involved. Appellees and those under whom they deraign title have paid taxes on the entire land from 1890 down to the date of the trial. Since the execution of the two deeds in 1916, one from Houston Oil Company of Texas to Southwestern Settlement & Development Company, and the other from said two companies to Republic Production Company, the entire 4328 acres have been assessed for taxes each year against said three companies and Kirby Lumber Company and tax receipts have been issued each year to said companies jointly, there being no separation, in the rendition or in the tax receipts, of the surface, mineral and timber estates.

The facts with respect to possession of the land are thus stated in the certificate:

"There has been at different times possession of the land in controversy for the purpose of cutting timber, and by tram roads on the land as much as three and four years at a time by appellees and those under whom they claim prior to 1925; none of such possessions, however, being sufficient to mature limitation title. But, beginning in 1925, there was a period of occupancy of the land involved under a tenant, M. J. Williams, and others, which possession extended down to the time of the filing of this suit. Those placing said tenants in possession of the land were agents both of the Southwestern Settlement & Development Company and of the Houston Oil Company of Texas. The acknowledgment of the tenancy was in favor of the Southwestern Settlement & Development Company, the Houston Oil Company of Texas, the Kirby Lumber Company, and the Republic Production Company, and, among other recitals, contained the recital that the first parties 'are

collectively (each having respective interests in accordance with the contractual relations between them and being collectively referred to herein as first parties) owners in fee simple of the hereinafter described tract of land, title to which we acknowledge to be in said first parties, with interest each as fixed by said contractual relations, which tract of land is described as follows, towit:' Here follows definite description of 4328 acres of the league, being all of same except the aforesaid 100 acres. It recites that first parties were desirous of placing a tenant thereon for the purpose of preventing any and all persons from trespassing upon same or from cutting and removing the timber 'now' situated or standing and growing thereupon. The said Williams and wife, therein sometimes described as second parties, acknowledge their tenancy unto 'said first parties to the said land,' and to all and every part thereof, whether in their actual possession or not, and obligate themselves to use said land for residential, farming and stock raising purposes until 1-1-35, unless said agreement is sooner terminated, as provided therein. The possession held under the tenancy agreement was of the surface through residence and cultivation and use of such a character as to mature title by limitation under the five years statute."

After the foregoing statement of the facts as to possession the following conclusion is expressed in the certificate:

"Conceding that the payment of taxes and the holding of such possession under duly recorded muniment of title were sufficient, limitation title ripened in appellees to the mineral estate sued for, unless, under the doctrine of equitable partition, such mineral estate had been so segregated from the surface estate prior to the beginning of the possession in 1925 that adverse possession and use of the surface under the attendant circumstances would not ripen title to such mineral estate by limitation."

This suit was filed August 31, 1932, by appellants as plaintiffs against Southwestern Settlement & Development Company, Houston Oil Company of Texas, Republic Production Company and Kirby Lumber Company as defendants. The original petition does not appear in the transcript but the first amended original petition is in form a statutory action of trespass to try title. By the second amended petition upon which the case was tried, the appellants sue for the title and possession of an undivided one-half interest in and to all of the oil and gas in, upon and under the said 4328 acres of land in the Ariola League. In the alternative, the appellants allege in said

petition that if they are not the owners in fee simple of an undivided one-half interest in the oil and gas in and under the land, then they are the owners of an undivided one-half interest in the land and they sue to recover such undivided one-half interest. They seek also to recover damages in the sum of $5,000.00 on account of being dispossessed of the land and damages in the sum of $750,000.00 as the market value of five hundred thousand barrels of oil alleged to have been taken from the land. Appellees, as defendants in the trial court, defended on pleas of not guilty and also asserted title in themselves under the three, five and ten years statutes of limitation.

The questions certified are as follows:

### "QUESTION NO. ONE

"In view of the conveyance by the Houston Oil Company of Texas of the surface estate to the Southwestern Settlement & Development Company, and of the timber to the Kirby Lumber Company, and of the one-half of the oil and gas estate to the Republic Production Company by virtue of the instruments of conveyance above mentioned, should it be held that under the doctrine of equitable partition the Houston Oil Company of Texas, thereby divested itself of its entire interest in the land involved, so that the appellants became the owners of the remaining half interest in the mineral estate herein sued for as their segregated portion of the common estate?

### "QUESTION NO. TWO

"If it be decided that the conveyances in question did work a segregation of the mineral estate herein sued for from the surface estate, then did such segregation of the mineral estate from the surface estate occur prior to the year 1925, when the appellees went into adverse possession of the surface estate, so that possession and use of the surface estate, beginning in 1925 under the attendant circumstances, did not mature limitation title to said mineral estate?"

The petition filed by appellants as plaintiffs in the trial court does not disclose under what theory they claim the right to recover judgment for an undivided one-half interest in the oil and gas in the 4328 acres of land. It merely alleges in the form used in suits in trespass to try title that the plaintiffs were on January 1, 1932, lawfully seized and possessed of an undivided one-half interest in and to the oil and gas in the land and that the defendants ejected plaintiffs therefrom and unlawfully withhold the possession from them. In the brief

filed in this court, as in their other briefs, appellants state their contention or claim as follows:

"Appellants' claim to an undivided one-half interest in the oil and gas estate was and is based upon the contention that the Houston Oil Company, their cotenant in 1916, having elected to partition the common estate and to convey to third parties by meter and bounds specific portions of the common estate, which portions of the common estate had a then market value in excess of the Houston Oil Company's interest in said common estate, determined by the then market value thereof, that the Houston Oil Company thereby exhausted its interest in the common property and the nonconveying cotenants not having elected to avoid the partition and conveyances made by the Houston Oil Company in 1916, became the owners of said remaining portion of the common estate, and neither the Houston Oil Company of Texas, nor any one in privity with it, could thereafter, or now, as against nonconveying cotenants question the validity of said transfers, or avoid the consequences of Houston Oil Company's voluntary action in making partition of said estate."

In further explanation of their position appellants show that, at the time the conveyances were made by Houston Oil Company of Texas in 1916 in which that company excepted and reserved to itself one-half of the oil and gas in the land, the total value of the land was $67,084.00, and that since the oil and gas had at that time none other than a nominal value, one-half of the oil and gas was then worth much less than $5,828.55, which represents three-thirty-fifths of the total value of the land at that time, three-thirty-fifths being the undivided interest then owned by appellant's predecessors in title. They take the position that Houston Oil Company of Texas brought about a partition by making sale of a specific portion of the common estate, which portion was of value in excess of the value of its pro rata share of the estate. They contend that such partition and conveyance are binding on Houston Oil Company of Texas and invoke the doctrine of equitable partition as in effect giving them title to that portion of the common estate which was not conveyed by Houston Oil Company of Texas.

The authorities relied upon by appellants are cases in which the cotenant has conveyed a specific tract or tracts out of the common property and not where he has executed a deed which operates or purports to operate as a severance of the mineral estate. By the one deed there is an attempted partition of the

land in kind. By the other deed there is an attempted division or severance of the original fee into two estates, or legal interests, commonly called the mineral estate and the surface estate.

There is sufficient difference between partition and severance and between the rights and interests of the parties after attempted partition and the rights and interests of the parties after attempted severance to raise at least serious doubt whether a doctrine, which has been developed and used primarily for the purpose of protecting the grantee of a specific tract or parcel of commonly owned land, has any application whatever when the deed of the one cotenant, instead of undertaking to convey a specific tract or part of the land, purports to convey all of the land with reservation of minerals. It becomes unnecessary, however, to resolve that doubt because in our opinion the equities of the case as made by the facts set out in the certificate are not such as to justify the application of the equitable rule invoked.

If the severance attempted to be made by the execution of the deeds by Houston Oil Company of Texas is regarded as an attempted partition, it is a most unfair division, whether it is tested by the value of the property at the time the deeds were made or by its value when this suit was tried. Houston Oil Company of Texas in its sales of interests in the land disposed of everything that then had value, retaining only an undivided one-half interest in the oil and gas which at that time was of but nominal value. If the deeds could be treated as effecting a partition at the time of their execution, the grantees of Houston Oil Company of Texas acquired by such partition everything of value and there was left for the non-joining cotenant an interest which had no value. If the fairness of the asserted partition is considered as of the time this suit was tried, then appellants are asking that there be decreed to them as their part of the property, not three-thirty-fifths or the whole property, but one-half of the oil and gas in the 4238 acres, when the land has acquired great value on account of the production of oil and has slight value except for the oil and gas. To this enormous increase in the value of the oil and gas interest in the land appellants did not contribute. It was brought about by the development of the land by appellees Houston Oil Company of Texas and Republic Production Company at great expense. From the year 1907, when Vincent's deed reciting that he acted for all of the heirs of Duck, including those through whom appellants claim, pur-

ported to convey all the Duck one-fifth interest in the land to the receiver of Houston Oil Company of Texas, until the filing of this suit, which was directly after oil was produced on the land, neither appellants nor those through whom they claim made any active assertion of ownership of the land, although appellees during all of that time claimed the entire interest in land under Vincent's deed and other deeds, assessed the land for taxes and paid all of the taxes and for a great part of the time were in actual possession of the land.

We agree with the conclusion expressed by Associate Justice Combs who prepared the tentative opinion which accompanied the certificate from the Court of Civil Appeals: "It is evident on the face of this record that the application of the doctrine of equitable partition is not here called for. Its application would violate well recognized rules of equity jurisprudence and make it an instrument of injustice."

Appellants do not dispute the fact that a decree awarding to them an undivided one-half interest in the oil and gas would give them vastly more than three-thirty-fifths of the value of the whole estate in the land but they say that they are asserting "legal rights that in law follow a voluntary ex parte partition made by the Houston Oil Company" and "are not invoking a partition by the application of principles of equitable partition."

■ If appellants sought by suit to enforce their legal rights or interests they would sue for the title to an undivided three-thirty-fifths interest in all of the land. The statement of their claim or contention hereinbefore quoted and the authorities on which they rely unmistakably show that they are invoking the doctrine of equitable partition in order to have adjudged and set apart to them a one-half interest in the oil and gas, that is, everything not heretofore conveyed by Houston Oil Company of Texas. It clearly appears from the authorities hereinafter discussed that the doctrine does not involve the creation or the enforcement of fixed definite legal rights. Such legal rights, except as between the parties to the deed, do not arise from the execution by a cotenant of a deed purporting to convey a specific part of the land or from the execution of such deed and the nonjoining cotenant's election not to avoid it. On the contrary, the doctrine is an equitable doctrine, which concerns itself primarily in protecting the vendee in the part of the land conveyed to him, when and to the extent that this can be done without prejudice to the cotenants of the whole tract, and which in the attainment of such primary object

undertakes fairly to adjust the equities of all of the interested parties.

■ At a very early date courts of equity assumed jurisdiction in cases of partition, and even after partition at common law was extended by statute to joint tenancies and tenancies in common, the remedy in the law courts was still so narrow and imperfect that the jurisdiction of equity in partition soon became almost exclusive. Pomeroy's Equity Jurisprudence, (2d Ed.) Vol. 5, Secs. 702-703, pp. 4781-4785; Story's Equity Jurisprudence, (14th Ed.) Vol. 2, Sec. 843, pp. 251-252. In this State partition by suit, whether brought under the statute or without the aid of the statute, does not proceed independently of the rules of equity. Article 6106, being a part of the partition statute (Article 6082-6109, Revised Civil Statutes of 1925) and in effect since 1879, expressly provides that no provision of the statute shall preclude partition in any other manner authorized by the rules of equity and that the rules of equity shall govern in proceedings under the statute in all things not provided for therein. A partition suit, therefore, under the statute is not strictly a proceeding at law, for it is governed by the rules of equity in all things not expressly provided for in the statute. Furthermore, procedure under the statute is not obligatory. The court may administer relief upon the principles of equity without the aid of the statute. Grassmeyer v. Beeson, 18 Texas 753, 766, 767; Moore v. Blagge, 91 Texas 151, 162-166, 38 S. W. 979, 41 S. W. 465; Kalteyer v. Wipff, 92 Texas 673, 682, 52 S. W. 63.

In Arnold v. Cauble, 49 Texas 527, cited by appellants, the tract of 160 acres of land involved was the community property of Cason and wife. After Cason's death his surviving wife sold and conveyed the south one-half of the survey to Arnold, who went into possession and made valuable improvements. Subsequently the surviving wife sold and conveyed the north one-half of the survey to Griffin. The plaintiffs, the heirs of Cason, sued all interested parties, claiming an undivided one-half interest in all of the land and asking for partition. The commissioners by their report, which was confirmed by the trial court, found that the north and south halves of the survey were of equal value, set off the north half to the plaintiffs and divided the south half between Arnold and Griffin. The Supreme Court reversed the trial court's judgment, holding that it was prejudicial to the rights of Arnold, in that the court was not justified in floating Griffin down on the south half which had been conveyed to Arnold and thus giving Griffin

a right to land he had not bought. In remanding the cause for new trial the court discussed "some of the principles and rules of equity governing a suit of this kind for partition" and stated its conclusion with respect to the rights of the plaintiffs and Arnold as follows:

"What we decide upon this subject is, that the commissioners having set apart the north half of the land to the plaintiffs, and the court having confirmed it in the decree, the preference thereby given to Arnold is not equitable, but is rather in consonance with our opinion of what should be the equitable rule under the circumstances of this case, if it can be done, and at the same time the rights of the plaintiffs be fully meted out to them in the division of the land."

The court's discussion of the principles and rules applicable to such case contains the following:

"Subject to this equitable liability, they (the plaintiffs) have a right to have the land divided without any further regard to the rights of the persons who may have bought different portions of the land from their mother, to the extent that such disregard of their rights may be necessary to give them their full share in the land in the partition. (McKey v. Welch, 22 Texas, 396; 1 Hilliard on Real Estate, 593).. To that extent, the conveyances to Arnold and Griffin were voidable, however perfect their titles may have otherwise been. Still, as their titles were not necessarily void, they should, on principles of equity, be respected so far as it could be practicably done, consistently with the rights of the plaintiffs in making the partition. (Id.; Robinson v. McDonald, 11 Texas, 390; Freem. on Co-tenancy and Part., Sec. 425; Campau v. Godfrey et al., 18 Mich., 32.)

"Where there is but one person so holding under a cotenant, or several holding small portions comparatively, so that it is practicable, equity would require that the partition should be made so as to leave them in possession of the land sold to them, especially where they have made improvements on such portions, by setting apart that part of the land to the co-tenant that is their vendor.

"In that event, their deed would mature into a good title. (See authorities above cited.) But that is not practicable in a case like this, where one co-tenant, entitled to only a half undivided interest in the land, sold half of the whole tract to Arnold, and the other half afterward to Griffin, by deeds purporting to convey the entire interest in each part, and not an undivided interest. Notwithstanding that form of conveyance,

they conveyed such interest, and only such interest, in the land as she possessed, and had a right to convey, according to the provisions of the statute concerning conveyances."

Quotation at length has been made from the opinion in Arnold v. Cauble, because it announces the following conclusions pertinent to the question presented in the instant case: A deed by one cotenant purporting to convey the entire interest in a part of the commonly owned land conveys such interest, and only such interest, in the land as the maker of the deed possesses. When the nonjoining cotenant sues for partition equity will require, so far as it can be practically done, consistently with the rights of the plaintiff in making the partition, that the partition be so made as to set aside to the grantess in the deed from the one cotenant, especially when he has made improvements, that part of the land which was conveyed to him. When that is done the deed will mature into title. Before the land is thus set aside to such grantee the conveyance to him is voidable, in the sense that it is subject to be disregarded if necessary to give the nonjoining cotenant his full share of the land, in the partition, and subject, on the other hand, to maturity into title by the entry of decree of partition awarding to the grantee the tract which was conveyed to him.

The principles and rules announced by the court in Arnold v. Cauble have not been changed by later decisions. In Maverick v. Burney, 88 Texas 560, 32 S. W. 512, which was a suit for partition, the defendant, one of the cotenants, had conveyed parcels of the land to several persons before the institution of the suit. The decision was that such grantees should be made defendants so that on partition they might "be protected as far as possible without doing injustice to the cotenants of the whole tract." The opinion, like that in Arnold v. Cauble, classifies the deed of the one cotenant to a specific parcel of the land as voidable rather than void, but it clearly appears from the opinion that the word voidable was used in the same sense that it obviously has in the opinion in the early decision. The portion of the opinion in Maverick v. Burney directly relevant to the question here under consideration is in the approved quotation from Cameron v. Thurmond, (56 Texas 22) where it is said that the grantee of the parcel will be protected as far as possible *without doing injustice to the cotenants of the whole tract.* This means of course that the doctrine will not be so applied as to do injustice either to the nonjoining cotenant or to the cotenant who has executed the deed to the parcel.

The rule of equitable partition was only incidentally dis-

cussed in the opinion in Heller v. Heller, 114 Texas 401, 269 S. W. 771, in answering a certified question as to the extent of the authority given a surviving wife by the husband's will to sell community property. The part of the opinion which describes the deed of one cotenant to a specific parcel as voidable is in substance the same as the statement made in Maverick v. Burney. That it was not intended by the language used to express the opinion that such deed invests the grantee presently with any part of the nonjoining cotenant's title or interest in the property clearly appears from the following paragraph of the opinion:

"The deed of a tenant in common to a specific parcel of the land held by him with others is not absolutely void. It is always good as against the grantor. March v. Huyter, 50 Texas 251. Such a deed does not convey or destroy any of the title of the other cotenants in and to the land described therein. Yet, while a co-tenant has no power to divest the title of the other owner by selling a specific part of the common property, it is well established that a court of equity will protect such a purchaser, if it can be done without injury to the other owner, by setting apart to the vendee of the grantor the particular tract bought. Furrh v. Winston, 66 Texas, 522, 1 S. W. 527."

The general rules as given in the opinion of the Court of Civil Appeals in Harrison Oil Company v. Sherman, 66 S. W. (2d) 701, (application for writ of error refused) as to the rights of the parties when a cotenant executes a deed to a parcel of the land are not different from those set out in the cases above discussed. The suit was by appellees for the recovery of a certain 130 acres out of a 500 acre tract. Appellees' cotenants, without the joinder of the appellees, made conveyance of specific portions of the common property. Thereafter appellees made conveyances of specific portions of the property, the deeds containing recitals construed by the court to manifest the grantors' intention "to convey their interest in the two specific tracts, which interest they identified and described as being all the interest held by them under Mrs. Sherman." The decision made by the Court of Civil Appeals was that, because appellees had by the execution of these deeds identified and conveyed all the interest owned by them under Mrs. Sherman, they could not recover the 130 acre tract for which they sued. The case does not involve the same question as that certified herein by the Court of Civil Appeals.

In Lasater v. Ramirez, (Com. App.) 212 S. W. 935, several cotenants of a 3825 acre tract, without joinder by cotenants

owning small interests, conveyed a specific 2500 acres out of the whole tract. The remaining acreage was exactly the same in kind, character and value, acre per acre, as the tracts sold. It was held that in the suit of one of the nonjoining cotenants, who was non compos mentis, his interest amounting to 348 acres in the whole 3825 acres should be set apart to him out of the unsold portion of the land. Judge Sonfield, who wrote the opinion, in discussing the nature of the interest of the nonjoining cotenant and the limitations upon the right of the purchaser to the specific tract conveyed to him said:

"The right of a purchaser from one tenant in common to the specific tract conveyed to him does not depend, and is not based upon, the nonjoining tenants' assent to, acquiescence in, or recognition of, the sale; nor is it created through estoppel. The right exists independent of any act or conduct on the part of the nonjoining tenants, and is conditioned solely upon the question whether its enforcement would prejudice or injuriously affect the other owners. * * * He (the nonjoining cotenant) is entitled to an interest of one-eleventh in the whole, approximately 348 acres. His interest is in the tract in its entirety. If, however, from the unsold portions of the land his interest can be equitably adjusted, the court will protect defendants by setting apart to them their specific tracts. Such protection is predicted upon a recognition of the equities of the respective parties, unaffected by the mental incapacity of one of the cotenants."

The judgment rendered by the trial court in the suit filed by the State for the recovery of the excess within the bounds of the leagues of land, supposed to contain in all three million acres, granted in payment for the construction of the State Capitol was that 55,089 acres of land be selected by the commissioners and set apart to the State out of the approximately six hundred thousand acres of the land unsold and still possessed by those who built the capitol. The learned trial judge was careful to incorporate in the judgment of partition a provision that the land set apart to the State should be of a quality and value equal to the average quality and value of the lands still possessed by the defendants in their unimproved condition and of a quality and value equal to the average quality and value of all of the lands in the leagues patented by the State in payment for the State Capitol. The Supreme Court, in affirming the judgment (Findlay v. State, 113 Texas 30, 46, 47, 250 S. W. 651), expressed its opinion that it "is in accord with the principles of right and justice, for the State to have par-

tition against it (the Capitol Company) for the excess out of land still in its hands, and not disturb those parties to whom it has sold parts of the land." In support of its conclusion the court quoted from Justice Stayton's opinion in Peak v. Swindle, 68 Texas 242, 4 S. W. 478, as follows:

"The general rule, that a sale by one tenant in common of a distinct part of a larger tract of land will be protected, and the part so sold set apart to the vendor when it does not exceed the share to which the co-tenant vendor was entitled, ought to be enforced in this case, *if under the general rules applicable to such cases this can be done without prejudice to other persons. This is the only manner in which the equities existing between the parties can be fairly adjusted.*" (Italics ours.)

In Joyner v. Christian, (Com. App.) 113 S. W. (2d) 1229, several cotenants, without joinder of other cotenants who owned an undivided one-sixth interest, partitioned all of the land by agreement and exchange of deeds into several separate tracts. The cotenants who did not join in the attempted partition sued one of the parties for recovery of part of the land which had been set apart to him. At the time the partition was made the land was uniform in value throughout and the division was made upon a purely acreage basis. The court expressed the opinion that the agreed partition was void because of nonjoinder of the heirs who owned the one-sixth interest but that it became effective upon the principle of estoppel when it was acquiesced in by the nonjoining heirs. The cause was remanded for error on the part of the trial court in awarding to the plaintiffs 5.24 acres of the tract which had been set apart to the defendant instead of an undivided one-sixth interest in that tract. We cite the opinion in Joyner v. Christian because of its statement of the rule that a partition attempted to be made without joinder of all of the cotenants is ineffective when made but will become binding when ratified by those who did not participate in it. On the same principle the action of one cotenant in conveying a specific parcel of the commonly owned land does not divest the nonjoining cotenant of his interest in the parcel conveyed and is not an effective partition when made, but it will become effective when the court, after finding that it can equitably be done, sets apart such specific tract to the vendee.

The opinion of Chief Justice McClendon in Merriweather v. Jackson, 38 S. W. (2d) 599, 600, contains the following terse, and we think correct, statement of the effect of a con-

veyance by a cotenant of a specific portion of the commonly owned property:

"While it seems universally held that one tenant in common cannot prejudice the rights of his cotenants by conveying the entire title in a specific portion of the common property, this rule is subject to the limitation in this state that such conveyance will be upheld in equity, and the vendee's right to the specific land will be sustained when the circumstances render this course equitable."

■ We have found no case in which the doctrine of equitable partition has been so applied as to award to the nonjoining cotenant a part of the property greatly in excess of the value of his interest in the whole, and no case which holds, or from which it can correctly be concluded, that the execution by one cotenant of a deed to a specific part of the property commonly owned gives to the nonjoining cotenant a legal right to claim and recover as his own the property which was not conveyed, wholly without reference to its value at the time of the trial. In our opinion it is thoroughly established by the authorities discussed and the principles announced by them that a deed by one cotenant of a specific part of the property in no way affects the title or interest of the nonjoining cotenant in the property and that such deed does not effect a partition. Under the doctrine of equitable partition the partition is effected when the court enters its decree setting apart to the vendee the specific part that was conveyed to him. It further clearly appears from the same authorities that the doctrine, as its name indicates, is an equitable doctrine to be applied, as other rules of equity, in such way as to do justice to all of the parties affected.

■ We answer the first certified question in the negative, that is, that it should not be held that the Houston Oil Company of Texas by the deeds referred to in the question divested itself of its entire interest in the land involved so that the appellants became the owners of the remaining half interest in the mineral estate herein sued for as their segregated portion of the common estate.

Question No. 2 in the certificate of the Court of Civil Appeals presents two questions, first, whether the conveyances made by Houston Oil Company of Texas worked a severance of the mineral estate from the surface estate, and second, when the severance, if there was a severance, was made. While the questions bear upon the appellees' assertion of title to the oil and gas through adverse possession, we do not construe the

certificate as intending to submit to this court the question whether the appellees' possession, under the facts set out in the certificate, was adverse to appellants' ownership of an interest in the oil and gas in the land, and we do not decide that question.

It is apparent from what has been said above in discussing the first question certified that in our opinion the deeds executed by Houston Oil Company of Texas did not effect a severance of appellants' interest in the whole fee into a mineral and a surface state, or stated somewhat differently, that the deeds did not segregate appellants' interest in the minerals from the surface estate. Appellants owned an undivided three-thirty-fifths in the land, that is, in the entire estate unsevered. The deeds executed by Houston Oil Company of Texas purported to affect the entire estate. By the first deed that company undertook to sell and convey to Southwestern Settlement & Development Company all of the land in controversy, excepting and reserving all of the oil and gas. This deed, however, as heretofore held in answering the first certified question, did not in fact convey any part of appellants' title or interest. If ineffective as a conveyance of any part of appellants' title or interest in the land, it was also ineffective as a severance of appellants interest into two estates. As against appellants, the deed did not convey their interest in the surface estate to Southwestern Settlement & Development Company and did not except or reserve their interest in the oil and gas to Houston Oil Company of Texas, and therefore the deed neither worked a severance of appellants' mineral interest from appellants' surface interest nor segregated appellants' interest in the oil and gas from the surface estate. The same is true, as far as appellants' interest is concerned, of the other deeds executed by Houston Oil Company of Texas. Before the execution of the deeds appellants' interest in the land was an undivided, unsevered three-thirty-fifths interest in the whole, surface and minerals. It remained such after the execution of the deeds.

■ Only an effective deed will operate to sever the mineral estate from the surface estate. The United States Circuit Court of Appeals held in Gill v. Colton, 12 Federal (2d) 531, that a deed conveying land with reservation of mineral rights, if not accepted by the grantee, does not operate to sever the mineral rights from the surface. In Morse v. Shackleford, (U. S. C. C. A.) 9 Federal (2d) 907, Duckham, the owner of the land, conveyed it to Breck. Thereafter Duckham executed a deed to Crawford purporting to convey the same land but reserving

all mines and minerals. Morse, claiming under the first deed, sued Shackleford, claiming under the second deed. The suit involved the title to the minerals. Morse contended that the second deed, that from Duckham to Crawford, under which those who possessed the land claimed, separated the ownership of the minerals from that of the land. The court held, however, that the second deed made by Duckham did not sever the mineral estate from the surface estate, because when it was made Duckham had nothing to convey, having theretofore conveyed both the surface and the minerals to Breck.

We find in the certificate from the Court of Civil Appeals no evidence of ratification by appellants of the attempted conveyance of their interest in the land by Houston Oil Company of Texas. Nor do the petitions filed by appellants in this suit evidence a ratification of the deeds, unless the second amended petition, in which they sue appellee for an undivided one-half interest in the oil and gas, can be construed as such ratification. We need not determine whether it can be so construed, nor need we determine whether such ratification would make the deed effective as a severance of appellees' interest in the minerals from the surface estate, for such ratification, if it was a ratification, occurred after the suit was filed. Prior to such ratification the deeds did not sever appellants' interest.

We answer the second certified question as follows:

The deeds in question did not work a severance of appellants' interest into a mineral estate and a surface estate, and did not work a segregation of appellants' interest in the minerals from the surface estate. Under the facts set out in the certificate there was no severance or segregation of appellants' interest or estate prior to the year 1925 or prior to the time this suit was filed.

Adopted by the Supreme Court January 11, 1939.

Rehearing overruled February 15, 1939.