TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-01-00243-CV






Wilderness Cove, Ltd., Appellant



v.



Cold Spring Granite Company, Appellee






FROM THE DISTRICT COURT OF BURNET COUNTY, 33RD JUDICIAL DISTRICT


NO. 20299, HONORABLE GUILFORD L. JONES III, JUDGE PRESIDING







 Wilderness Cove, Ltd. ("Wilderness Cove") appeals the judgment of the trial court
declaring that Cold Spring Granite Company ("Cold Spring") holds an undivided interest in the
granite on the property that is the subject of this lawsuit, and that Cold Spring may enter that
property to quarry and remove its granite. The issues presented by this appeal are: (1) did the
acquisition of the granite by Cold Spring's predecessor give it a severable estate in land, i.e., the
granite deposit in place, and if so, (2) is the severable granite estate the dominant estate? These
appear to be issues of first impression. (1) The trial court answered both questions in the affirmative. 
We will affirm the judgment of the trial court.


BACKGROUND
 

 The controversy between Wilderness Cove and Cold Spring focuses on an
approximately 300-acre tract of land in Burnet County (the "Property"). Ownership of the Property
originally passed from the state to private individuals in 1845. By 1890, title to the Property was
held in fee by G.W. Lacy and four others as tenants in common. In 1890, Lacy and two of his
cotenants conveyed their interest in the granite located on the Property to the Texas Capitol Granite
Company ("Texas Granite"). (2) The deed conveyed "all of our interest in and to the Granite on the
. . . land together with the necessary right of way to the extent of our interest in the same for
constructing a Rail Road and for quarrying and handling the said Granite." (3) The crux of this appeal
involves the legal implications of this conveyance.

 At the time of the conveyance, Lacy and the two other grantors owned a one-half
undivided interest in the Property in fee. The remainder of the Property was held in fee by two other
parties who did not join in the granite conveyance. Therefore, the Granite Deed conveyed a one-half
undivided interest in the granite to Texas Granite. However, the remainder of the interest in the
granite continued to be held by the two non-joining cotenants. Lacy later acquired all of his original
cotenants' remaining interests in the Property, resulting in his ownership of the Property in fee, less
only the one-half undivided interest in the granite that had been conveyed to Texas Granite. 
Although the Property has been the subject of numerous complicated transactions and conveyances
since 1890, the parties stipulate that today Wilderness Cove holds title to the surface estate (4) and a
one-half undivided interest in the granite and Cold Spring holds title to an unspecified fractional
interest in the other one-half of the granite.

 This dispute arose primarily because the Property's character has changed since the
granite was conveyed in 1890. Approximately 30 acres now fronts on Lake LBJ, making the
Property more attractive for residential or recreational use. In fact, Wilderness Cove purchased the
property on July 12, 2000, with the intent to subdivide and develop the 30-acre lakefront parcel for
residential use. However, in 1890, the Property was most valued for its granite reserves because the
"new" state capitol building was being constructed in Austin with "Texas red granite" from Burnet
County. The demand for granite was so high at that time that the consideration paid for the granite
estate was $200,000, or approximately $30 per acre. (5) However, the granite was not then, and has
never been, quarried.

 This dispute erupted once Wilderness Cove began preparing the Property for
development. Cold Spring sought a restraining order prohibiting Wilderness Cove from drilling
holes or placing explosive charges into the granite. In the ensuing litigation, both parties sought
declaratory and injunctive relief as to their respective rights in the Property. Wilderness Cove also
sought to partition the Property. The trial court severed the action for declaratory relief, leaving the
partition question to be resolved following the conclusion of this appeal.

 The trial court, after hearing the evidence, issued a letter ruling which sets out the
reasons for its decision. (6)


By all current tests, granite is a mineral. The "ordinary and natural meaning" test of
Moser (7) would imply this result. Regardless of that test, which is unnecessary because
we have a specific conveyance and are not interpreting intent of the amorphous
"other minerals" phrase, the granite conveyed to Cold Spring's predecessors in title
was clearly entitled to status as the dominant estate at the time of the original
conveyance. Without the right to exploit the granite the severance by conveyance has
no meaning.


The parties are, without dispute, cotenants.


Simply as cotenants in granite, there appears to be neither legal precedent nor logic
that would prevent one of them from developing the granite without the consent of
the other.


Under Byrom (8) the one cotenant clearly is permitted to proceed without consent of the
other cotenant.


The fugitive substance rationale which originated in Burnham (9) is supportive of the
result in Burnham and in Byrom; but


Those cases just happen to be oil and gas cases--a natural circumstance since most
of the mineral law in Texas has arisen in that context; and


The primary principle in those cases must, in the view of this Court, be rooted in the
basic rules of cotenancy.



(Footnotes added.) The trial court then issued a declaratory judgment and issued findings of fact and
conclusions of law consistent with the letter ruling. From this judgment, Wilderness Cove appeals.


DISCUSSION

 Our primary duty in interpreting the Granite Deed is to ascertain the intent of the
parties. Altman v. Blake, 712 S.W.2d 117, 118 (Tex. 1986). The 1890 Granite Deed evidences a
clear intent by the Lacy grantors to convey the deposit of granite in situ. Neither party challenges
the validity of the Granite Deed, but they disagree as to the effect of the conveyance. Cold Spring
claims a severed mineral estate in the granite while Wilderness Cove contends that the Granite Deed
merely conveyed the granite, which is a building stone and not a mineral, and added Texas Granite
and its successors as a cotenant in that specific portion of the surface estate.


The Granite Estate


 It is well settled that landowners, on whose property minerals have been or may be
found, may retain the fee or a lesser estate in the surface and convey severable and distinct estates
in the minerals to third parties. See, e.g., Benavides v. Hunt, 15 S.W. 396 (Tex. 1891). In 1890,
Lacy possessed an estate in land which was something less than a fee simple absolute. He chose to
convey a similar estate in the granite to Texas Granite, while retaining his interests in the remainder
of the Property. The clear intent of the conveyance is to sell the granite in place. While Wilderness
Cove recognizes that it shares its ownership of the granite with Cold Spring, it does not regard the
granite as a mineral.

 In support of its position, Wilderness Cove directs this Court to cases where the
mineral estate has been severed from the surface estate by the use of general terms. In Heinatz v.
Allen, 217 S.W.2d 994 (Tex. 1949), by the terms of a will, real estate was severed by devising "the
surface rights exclusive of the mineral rights" to one heir and "the mineral rights" to another. The
heir who obtained the mineral rights entered the property and began to quarry limestone. The surface
owner objected and filed suit, claiming that limestone could not be considered a mineral for the
purpose of the devise and, therefore, it belonged to the surface estate.

 In determining whether limestone was in fact a mineral, the Texas Supreme Court
looked at the character of the limestone and the process by which it could be severed and removed
from the ground. The court noted that the limestone lay fairly close to the surface and in
outcroppings and that its removal required quarrying. The court also discussed the evidence that
showed much of the limestone was not merchantable because its composition was such that the costs
of quarrying it would exceed the revenue realized from its sale. In determining whether a deposit
is part of a severed mineral estate, the court stressed the importance of commercial value:


In our opinion substances such as sand, gravel and limestone are not minerals within
the ordinary and natural meaning of the word unless they are rare and exceptional
in character or possess a peculiar property giving them special value, as for example
sand that is valuable for making glass and limestone of such quality that it may
profitably be manufactured into cement. Such substances, when they are useful only
for building and road-making purposes, are not regarded as minerals in the ordinary
and generally accepted meaning of the word. 


Heinatz, 217 S.W.2d at 997 (emphasis added). Because the limestone was not rare or of exceptional
character, the court held that it did not fall within the ordinary and natural meaning of a mineral. (10) 
Therefore, the court held that the limestone was not a mineral and that it belonged to the surface
estate.

 As additional support for the proposition that stone is not a mineral, Wilderness Cove
cites a line of cases involving disputes concerning the "other minerals" clause in reservations of "oil,
gas and other minerals." See Moser v. United States Steel Corp., 676 S.W.2d 99 (Tex. 1984); Reed
v. Wylie, 597 S.W.2d 743 (Tex. 1980) (Reed II); Reed v. Wylie, 554 S.W.2d 169 (Tex. 1977) (Reed
I); Acker v. Guinn, 464 S.W.2d 348 (Tex. 1971). In these cases, the supreme court struggled to
determine whether certain unspecified deposits of materials were intended to fall within the mineral
or surface estates. Eventually, as Wilderness Cove notes, the supreme court held that building stone
belongs to the surface estate as a matter of law. See Moser, 676 S.W.2d at 102. However, each of
these cases, including Heinatz, involves a general and ambiguous devise, reservation, or conveyance
of the mineral estate. Most of the cases involve a purported conveyance by implication of an
undescribed mineral referred to within the reservation clause as an "other mineral." Accordingly,
this line of cases is distinguishable from our case because we are confronted with an express
conveyance of an in situ deposit of granite.

 Further, even applying the Heinatz test to these unique facts, the granite located on
the Property does possess rare and exceptional characteristics that give it special value. The
extraordinary prices paid for the granite interest in the 1890s demonstrate its value because only
Burnet County, Texas, red granite was used in building the capitol building in Austin.

 Finally, Cold Spring provides additional authority that discusses a specific
conveyance which severed the mineral and surface estates. See Schwartz v. State, 703 S.W.2d 187
(Tex. 1986). The dispute in Schwartz focused on whether the Legislature intended to reserve the
coal and lignite under a tract of land when it deeded the surface estate but retained all minerals. The
Texas Supreme Court recognized that it had previously held that near surface coal and lignite
belonged to the surface estate as a matter of law. See Reed II, 597 S.W.2d at 748. However, the
court distinguished the situation in Schwartz because the grant was express rather than general in its
intent. Using the controlling rules of construction, the court was able to ascertain the Legislature's
specific intent behind the reservation of minerals expressly specified in the conveyance. The
supreme court then held that the proper interpretation of the conveyance was that the state meant to
withhold all of the coal and lignite located under the surface of the land that was granted, regardless
of whether extracting these minerals would destroy the surface estate. The court recognized that
"when there is an express conveyance of a specific substance," the rules of presumed intent
announced in earlier cases do not apply because they are merely rules for construing ambiguous and
generic conveyances. Schwartz, 703 S.W.2d at 189.

 In examining a deed containing a specific conveyance of a mineral interest, courts
must strive to give effect to the intentions expressed in the document itself. Plainsman Trading Co.
v. Crews, 898 S.W.2d 786, 788 (Tex. 1995). The Granite Deed specifically conveys the granite on
the Property. We have previously recognized that, with respect to oil and gas, Texas adheres to the
"ownership in place" doctrine and, it is well established under this doctrine that a severance creates
a separate corporeal estate in the minerals. Bagby v. Bredthauer, 627 S.W.2d 190, 194 (Tex.
App.--Austin 1981, no writ). We are persuaded that this rule should apply to specific conveyances
of minerals other than oil and gas. Here, the clear intent expressed in the Granite Deed was to
convey the in situ granite deposit as a severable estate. Accordingly, we hold that the specific
conveyance of the in situ granite deposit created a severable mineral estate.

The Dominant Estate

 The law regards a mineral estate as dominant, meaning the mineral owner has the
right to make necessary and reasonable use of the surface to remove the minerals. Plainsman , 898
S.W.2d at 788. This is an imperative rule of mineral law because without the right to reach and
extract the minerals, a mineral estate would be worthless. Moser, 676 S.W.2d at 103. Thus, Cold
Spring puts forth the argument that, as a mineral estate, the granite estate must be dominant. The
basic rule of mineral law supports Cold Spring's position. However, Wilderness Cove asserts that
the issue is more complex because the situation here involves a cotenancy in the granite estate with
a nonconsenting cotenant at the time of the creation of that granite estate.

 We note initially that Lacy and his fellow grantors intended to convey their granite
interest in the Property, thereby burdening their remaining surface estate. The language in the
Granite Deed expresses this intent. Furthermore, we also must assume that Lacy understood that the
result of his conveyance might destroy a portion of the surface estate and that he accepted reasonable
consideration in return for the conveyance.


It is reasonable to assume a grantor who expressly conveys a mineral which may or
must be removed by destroying a portion of the surface estate anticipates his surface
estate will be disminished [sic] when the mineral is removed. It is also probable the
grantor has calculated the value of the diminution of his surface in the compensation
received for the conveyance.



Moser, 676 S.W.2d at 103. The language in the Granite Deed provides unequivocal evidence that
the parties understood the conveyance to establish a dominant granite estate.

 However, our inquiry does not end here. Wilderness Cove contends that the Granite
Deed was ineffective in creating a dominant estate because, as a cotenant in the Property, Lacy could
not grant Texas Granite the rights to enter the Property and destroy the surface estate without the
consent of all of the cotenants. Wilderness Cove further contends that the Granite Deed failed to
convey a valid easement because Lacy did not exercise his right to partition the Property prior to
making the 1890 conveyance. As a result, Wilderness Cove argues that Cold Spring owns an interest
in the granite, but it has no legal right of entry to access it. Wilderness Cove claims Cold Spring's
only right is to receive a portion of the proceeds if Wilderness Cove ever chooses to quarry and sell
the granite. Wilderness Cove cites no authority supporting its position and we reject its thesis.

 A deed by one cotenant, without the consent or participation of other cotenants, may
only convey such interest as the maker of the deed possesses. Thomas v. Southwestern Settlement
& Dev. Co., 123 S.W.2d 290, 297 (Tex. 1939). However, the law does not require a cotenant to
partition the property prior to a conveyance; the nonparticipating cotenants simply retain their
interest until such time as they convey it or seek partition. See id. The right to partition is incident
to every tenancy in common; this right may be exercised by anyone holding an ownership interest
in the property. Tex. Prop. Code Ann. § 23.001 (West 2000). Lacy did not choose to partition prior
to conveying his interest in the Property to Texas Granite, but because Lacy only conveyed what he
had, the conveyance was valid. Lacy's right to partition and his rights to the burdened surface estate
passed to his grantee and assigns. We reject Wilderness Cove's argument that the Granite Deed was
an invalid transfer absent a partition prior to the original conveyance.

 Wilderness Cove correctly asserts that one cotenant may not grant an easement or
dedicate any portion of the property to a third party without the consent of his cotenants. Elliott v.
Elliott, 597 S.W.2d 795, 802 (Tex. Civ. App.--Corpus Christi 1980, no writ). However, the Granite
Deed did not grant an easement over the Property; it merely burdened the grantors' undivided one-half interest with a severed granite estate.

 Therefore, applying these principles to the conveyance in question, we conclude that
Cold Spring's severable granite estate is the dominant estate. We affirm the judgment of the trial
court.



 

 Mack Kidd, Justice

Before Justices Kidd, Yeakel and Patterson

Affirmed

Filed: November 15, 2001

Publish

1. Texas has an abundance of authority dealing with similar questions as applied to oil and gas
conveyances, but we have found no authority which confronts these questions directly.
2. The actual conveyance covered far more land than is at issue here. The deed describes a series
of nine tracts whose composite size approaches 1500 acres. Some of the tracts were conveyed in fee
simple. In some of the tracts only the granite was conveyed, as was the case here. The 300-acre tract
of land involved in this case was listed in the deed as tract number seven. 
3. We will follow the parties' nomenclature and refer to the 1890 deed as the "Granite Deed."
4. As will be discussed later, however, following the 1890 conveyance Lacy's original undivided
one-half interest in the surface estate became burdened with the legal effect of the granite
conveyance.
5. Testimony in the record revealed that Lacy purchased his undivided one-half fee interest in the
Property for approximately $0.50 per acre in 1881. The appellant points out, however, that the
original 1890 conveyance involved some degree of self-dealing since Lacy was the founder of Texas
Granite. As a result, the appellant questions whether $200,000 was an accurate market price for the
granite in 1890. However, at least one subsequent transaction for granite deposits, including those
located on the Property, yielded a sale price of $100,000 which, at the turn of the Twentieth Century,
was a substantial sum.
6. Although we quote portions of the letter ruling, we acknowledge that it has no legal effect.
7. Moser v. United States Steel Corp., 676 S.W.2d 99 (Tex. 1984).
8. Byrom v. Pendley, 717 S.W.2d 602 (Tex. 1986).
9. Burnham v. Hardy Oil Co., 147 S.W. 330 (Tex. Civ. App.--San Antonio 1912), aff'd, 195
S.W. 1139 (Tex. 1917).
10. In further discussion, the Texas Supreme Court referred to a decision by the Pennsylvania
Supreme Court discussing what was reserved to the mineral owner in a reservation of "coal and other
minerals." The Pennsylvania court also focused on the value of the substance and said that a vein
of fine marble or pure white quartz sand, valuable for making glass, would be included in a general
mineral reservation. The Texas Supreme Court recognized that the focus of that dispute was sand
that, like the limestone in its case, was of relatively poor quality.


 However, it is worth noting that the Texas Supreme Court quoted the Pennsylvania court for
the proposition that included in a mineral reservation "if near enough a market to have a value,
would be granite or limestone or other building material . . . ." Heinatz v. Allen, 217 S.W.2d 994,
999 (Tex. 1949) (emphasis added by the Texas Supreme Court) (quoting Hendler v. Lehigh Valley
R.R. Co., 58 A. 486, 487 (Pa. 1904)).