## J. M. LINDSAY V. M. E. AND D. C. FREEMAN.

### No. 7155.

1.  **Laws of Inheritance in 1837 in Texas.**—Intestate died in Texas in 1837. At that time, in absence of wife, child, or father, the mother inherited. 52 Texas, 375; 11 Texas, 165.

2.  **Proof of Death.**—Testimony that mother died *about 1860* will not support a finding that she died prior to August 14, 1860.

3.  **Estoppel by Deed.**—A conveyance for land purported "to convey, in consideration of $400 paid, the land certificates granted by the State of Texas to the heirs of E. J. W. Lowery, situated in Bell, Falls, Montague, Cooke, and other counties in Texas," among which the tract of land in controversy is described. The title at the time was in the mother of the grantors. *Held*, that they were estopped to assert title against their deed after their mother's death. Such is the effect although there was no covenant of warranty in the deed.

4.  **Estoppel by Recitals.**—The language in the deed whereby the grantors *convey* the fee simple estate in the land imports an assertion by them that they are the owners in fee simple of the land, and having thus asserted the fact of their ownership the grantors are estopped to deny such fact.

5.  **Effect of Words Used in Conveyance—Deed.**—Under article 999, Paschal's Digest, where a less estate than the fee is not expressly declared, the intent will be presumed that a deed for land is to convey an estate in fee simple.

6.  **Quitclaim.**—A deed conveying "the land and land certificates" described and purporting to convey them in fee simple, i. e., to convey an absolute indefeasible title, can not be treated as a quitclaim.

7.  **Statute Not Retroactive.**—Article 557, Revised Statutes, does not apply to conveyances executed prior to its enactment, touching the inferences to be drawn from a conveyance for land.

8.  **Effect of Judgment.**—A judgment in 1883 was rendered against the grantors who had sold August 14, 1860, by consent, and reciting a payment for the land by the defendant Lindsay of $500. *Held*, that the judgment had no greater effect than would a deed from the parties, and to entitle Lindsay to protection as a bona fide purchaser against holders under the deed of 1860 it devolved upon him to prove the payment of the purchase money. The recitation of such payment in the judgment was not sufficient.

9.  **Mental Incapacity.** — Where the testimony is conflicting, a finding that the grantors in a deed were of mental capacity sufficient to make the contract will not be revised. See facts.

APPEAL from Cooke. Tried below before Hon. D. E. BARRETT. The opinion states the case.

*Davis & Harris*, for appellant.—1. The court erred in finding that Benjamin F. Graves, through whom plaintiffs claim, took anything by the deed from Mary L. Lowery, Rebecca G. Lowery, Hulda C. Lowery, and Basilla Lowery, dated August 14, 1860, because Flora Lowery, the mother of the makers of said deed, was the only heir of E. J. W. Lowery, and there was no proof that she was dead at the time of the making of said deed. Prendergast v. Anthony, 11 Texas, 165; Goodrich v.

O'Connor, 52 Texas, 375; Schmidt's Civ. Law, p. 165; 2 Greenl. Ev., secs. 309, 354.

2.   The court erred in finding that Flora Lowery was dead when her daughters, on the 14th day of August, 1860, conveyed to Benjamin F. Graves.   2 Greenl. Ev., secs. 309, 354.

3.   The court erred in the third conclusion of fact, in finding that on the 14th of August, 1860, when Mary L. Lowery, Rebecca G. Lowery, Hulda C. Lowery, and Basilla Lowery conveyed to Benjamin F. Graves, they had sufficient capacity to make a deed.   Elston v. Jasper, 45 Texas, 409; Dexter v. Hall, 15 Wall., 9; Crawford v. Scoville, 94 Pa. St., 407; Bank v. Moore, 78 Pa. St., 407; Matter v. De Silver, 5 Rawle, 3; Devrow v. Sweet, 51 N. Y., 378; Rogers v. Blackwell, 49 Mich., 192.

4.   The court erred in sustaining the deed from Mary L. Lowery, Rebecca G. Lowery, Hulda C. Lowery, and Basilla Lowery to Benjamin F. Graves, because said Lowerys were imbeciles, incapable of contracting, and their incapacity was well known to said Graves.   Ricketts v. Jolly, 62 Miss., 440; Young v. Stevens, 97 Am. Dec., 592; Owings Case, 17 Am. Dec., 311; Harrison v. Lemon, 23 Am. Dec., 376; Leaver v. Philips, 22 Am. Dec., 372.

5.   Under the judgment of the District Court of Cooke County in the case of Hulda Lowery et al. v. J. M. Lindsay, the defendant acquired the estate and rights of the plaintiffs in that suit, and could show that at the time of the pretended deed to Benjamin F. Graves they were incapable of contracting.   Hollis v. Dashiell, 52 Texas, 196; Ewing v. Wilson, 63 Texas, 88; Denni v. Elliott, 60 Texas, 337; Freem. on Judg., sec. 152.

*Brown & Bliss,* for appellees.—1.   The deed from Mary, Rebecca, Hulda, and Basilla Lowery, without warranty, conveyed the land in dispute by metes and bounds in fee simple to Graves, and estops the grantors and privies to deny that they had title at the date of the deed. · The after-acquired title which came to the grantors by inheritance from their mother, Flora Lowery, inured to the benefit of Graves and his vendees, appellees.   Richardson v. Levi, 67 Texas, 365; Rodgers v. Burchard, 34 Texas, 452; Harrison v. Boring, 44 Texas, 255; Taylor v. Harrison, 47 Texas, 460; Van Rensselaer v. Kearney, 11 How., 297; Lessee of French v. Spencer, 21 How., 228; Irvine v. Irvine, 9 Wall., 617; Doe v. Oliver, 2 Smith's Lead. Cases, 707; Decker v. Caskey, 3 N. J. Eq., 446; Jackson v. Parkhurst, 9 Wend., 209; Taylor v. Shufford, 15 Am. Dec., 512; Gibson v. Chouteau, 39 Mo., 536; Dev. on Deeds, secs. 944, 950.

2.   In order for a subsequent purchaser to be protected against a prior unrecorded deed he must have purchased in good faith without notice, and must prove aliunde the recitals in his deed that he paid the purchase money or valuable consideration.   Watkins v. Edwards, 23 Texas, 443; Hawley v. Bullock, 29 Texas, 216.

TARLTON, JUDGE, *Section B.*—This was an action of trespass to try title, brought in the District Court of Cooke County, March 15, 1887, by Mary E. Freeman and D. C. Freeman, against J. M. Lindsay, to recover in the right of said Mary E. Freeman a survey of 320 acres near Gainesville, patented to the heirs of E. J. W. Lowery. The defendant answered by plea of not guilty, and the statutes of limitation of three, five, and ten years. At the November term, 1887, the cause was submitted to Hon. F. E. Piner, district judge, and he failing to render a decision at that term, a statement of facts was made out, approved, and filed, and the case taken under advisement. Afterward, on the 2d day of July, 1889, a decision upon said statement of facts was reached by Hon. D. E. Barrett, the succeeding district judge, and judgment rendered in favor of the plaintiffs for the entire survey, from which defendant Lindsay has prosecuted this appeal.

The conclusions of law and fact found by the court are as follows:

"1. As to matters of fact, I find that the land in controversy was patented on the 4th day of October, 1871, to the heirs of E. J. W. Lowery, deceased, by virtue of certificate for 1476 acres, issued October 15, 1856, by S. Crosby, Commissioner of the General Land Office, and that the said E. J. W. Lowery died about the year 1837, without wife or issue, and leaving surviving him as his sole heirs his mother, Flora Lowery, and his five sisters, viz., Elizabeth C. Ingles, Mary L. Lowery, Rebecca G. Lowery, Hulda C. Lowery, and Basilla Lowery.

"2. That plaintiff M. E. Freeman, wife of plaintiff D. C. Freeman, has a regular chain of transfer to the land in controversy from the said Elizabeth C. Ingles, Mary L. Lowery, Rebecca G. Lowery, Hulda C. Lowery, and Basilla Lowery, and that the said Flora Lowery was dead before the execution of the deeds to said land by the said Mary·L. Lowery, Rebecca G. Lowery, Hulda C. Lowery, Basilla Lowery, Elizabeth C. Ingles, and her children.

"3. That on the 14th day of August, 1860, when the said Mary L. Lowery, Rebecca G. Lowery, Hulda C. Lowery, and Basilla Lowery executed to Benjamin F. Graves the deeds to said land, they were capable of making a deed to real estate, and while of an inferior grade of intellect, they had sufficient mind and understanding to bind themselves by contract.

"4. That the land in controversy was conveyed to plaintiff Mary E. Freeman (then Mary E. Robinson) by plaintiff D. C. Freeman, on the 5th day of March, 1869, and that afterward during the year 1869 the plaintiffs were married, and have ever since been husband and wife.

"5. That in the month of November, 1882 (the said Mary L. Lowery having previously died), in the Fayette Circuit Court, in the State of Kentucky, the said Rebecca G. Lowery, Hulda C. Lowery, and Basilla Maloney (formerly Basilla Lowery) were adjudged to be insane

and incapable of transacting business, and that afterward the said Rebecca G. Lowery, Hulda C. Lowery, and Basilla Maloney, acting through their legal representative appointed by said Fayette Circuit Court, instituted suit against defendant J. M. Lindsay for said land, in the District Court of Cooke County, Texas, said Lindsay having been in possession of said land under a tax title since the 19th day of May, 1882, and on the 9th day of February, 1883, an agreed judgment was rendered in said suit, whereby this defendant Lindsay recovered all the interest of said plaintiffs in said land.

"6.   Finding as I do that the said Mary L. Lowery, Rebecca G. Lowery, Hulda C. Lowery, and Basilla Lowery (Maloney) had sufficient mental capacity when they executed the deed to Benjamin F. Graves, on the 14th day of August, 1860, to convey real estate, I hold that by said deed they parted with all their interest in the land in controversy, and having no further interest in the same, the defendant acquired no right to the said land as against the plaintiffs by said agreed judgment, and so believing, I render judgment for the plaintiff."

The appellees' claim rests mainly upon the deed referred to in the court's third conclusion, viz., the deed from the sisters, therein named, of E. J. W. Lowery to Benjamin F. Graves, dated August 14, 1860. The appellant's title (without reference to his claim of limitations) is founded upon the judgment set out in the court's fifth conclusion—the judgment rendered February 9, 1883, by the District Court of Cooke County, in favor of appellant against Rebecca G. Lowery, Hulda C. Lowery, and Basilla Maloney (formerly Basilla Lowery).

In his first and second assignments of error appellant complains, in effect, that the court erred in finding, as matter of law, that the sisters were heirs of E. J. W. Lowery, and were thus capable of conveying to Graves at the date of their deed to him, August 14, 1860, and in concluding, as matter of fact, that the mother, Flora Lowery, was dead at the date of the conveyance.

It is in our opinion true, as urged by appellant, that in this case, as the certificate issued October 15, 1856, to the heirs of E. J. W. Lowery, by virtue of an act passed September 1, 1856, the question of inheritance must be determined by the law in force at the date of the death of E. J. W. Lowery.   Goodrich v. O'Connor, 52 Texas, 375.   It is further true, that as Lowery, who had been serving as a soldier in the Texas revolution, died in 1837, when inheritance was regulated according to the provisions of the civil law of Spain and Mexico, his mother Flora, his sole surviving parent, inherited to the exclusion of his sisters.   Prendergast v. Anthony, 11 Texas, 165; Schmidt's Civ. Law, p. 265.

We are also of opinion that the evidence did not justify the conclusion of the court that Flora Lowery was dead on the 14th day of August, 1860.   If it was necessary to prove that the sisters were heirs of

their brother at that precise date, it was necessary to show that their mother (who inherited to their exclusion) was dead at that precise date. 2 Greenl. Ev., sec. 309.   The only testimony in the record fixing even approximately the date of Flora's death consists in the statement of the witness Reynolds, "that the women, Mary, Rebecca, Hulda, and Basilla, had trustees ever since the death of their *mother* and father," supplemented by the statement of the witness Gibbons, that "he was appointed trustee for the women *about 1860*." These statements justify the conclusion that Flora was dead "*about 1860*," but not that she was dead on August 14, 1860.   It was shown that in 1859 the daughters of Flora Lowery joined in a deed of partition of land; whence it is argued that Flora must have been dead at that date, or she would have signed the deed with her daughters.

In an action of trespass to try title, the burden of proof resting upon the plaintiff, a court would not be warranted in inferring in aid of the plaintiff's title that a certain person was dead at a particular date, because at that date such person failed to sign a conveyance with others. Appellees insist, however, that these errors are immaterial; that if Flora Lowery was not dead at the date of the deed made by Mary, Hulda, Rebecca, and Basilla Lowery, she was nevertheless dead long prior to the judgment of February, 1883, under which appellant claims; that at her death these women inherited as her children, and that the title if thus subsequently acquired passed by estoppel through their deed to Graves and to his vendees, the appellees.   The evidence of Reynolds and Gibbons shows, as above set out, that Flora Lowery died "about 1860;" the depositions of Graves read by appellants speak of her being dead in March, 1869.   There is no doubt of her death prior to the issuance of the patent, October 4, 1871, to the heirs of E. J. W. Lowery, and consequently prior to the judgment of February, 1883, under which appellant claims.   The deed of date August 14, 1860, purports "to convey, in consideration of $400 paid, the lands and land certificates granted by the State of Texas to the heirs of E. J. W. Lowery, situate in Bell, Falls, Montague, Cooke, and other counties in Texas," among which the tract of land in controversy is described.   It does not appear from the record whether or not the deed contains a covenant of warranty.   We apprehend that it does not, and thus treat it.

The question then arises, Is this conveyance such as to pass by estoppel against the grantors to the grantee Graves and to his assigns any title in the land subsequently acquired by the grantors?   If such be its effect, the errors complained of will not require a reversal of the judgment.

Article 999 of Paschal's Digest, in force when the deed in question was executed, provided, that "Every estate in lands which shall hereafter be granted, conveyed, or devised to one, although other words heretofore necessary at common law to transfer an estate in fee simple

be not added, shall be deemed a fee simple, if a less estate be not limited by express words, or do not appear to have been granted, conveyed, or devised by construction or operation of law." Construing, therefore, the instrument in question in the light of this provision, the grantors must be held to have intended to convey to Benjamin F. Graves an estate in fee simple. A less estate was neither limited by express words nor appears to have been conveyed by construction or by operation of law. The intention of the grantors to convey an estate in fee simple thus appears upon the face of the instrument. Bell County v. Alexander, 22 Texas, 359. This instrument is not a mere quitclaim or a release, or a conveyance of the right, title, and interest which the grantors then had. It purports "to convey the lands and land certificates;" and purporting to convey them in fee simple, it purports to convey an absolute, indefeasible title. It is such an instrument as would protect a bona fide purchaser. Richardson v. Levi, 67 Texas, 364.

If the grantors, the Lowery sisters, did not possess the estate which the deed purports to convey, nevertheless, as it was their clear intention, shown by the deed, to convey a fee simple, they and their privies, whether in blood, in estate, or in law, are estopped to claim by an after-acquired title, though the deed contains no warranty. The language in the deed whereby the grantors "convey" the fee simple estate in the land constitutes a recital which imports an assertion by them that they are the owners in fee simple of the land; and having thus asserted the fact of their ownership, the grantors are estopped to deny such fact. Root v. Crock, 7 Pa. St., 380; Jackson v. Parkhurst, 9 Wend., 209.

In Van Rensselaer v. Kearney, 11 Howard, 325, Justice Nelson, of the Supreme Court of the United States, uses the following language: "The principle deducible from the authorities seems to be, that whatever may be the form or nature of the conveyance used to pass real property, if the grantor sets forth on the face of the instrument, by way of recital or averment, that he is seized or possessed of a particular estate in the premises, and which estate the deed purports to convey; or, what is the same thing, if the seizin or possession of a particular estate is affirmed in the deed, either in express terms or by *necessary implication*, the grantor and all persons in privity with him shall be estopped from ever afterward denying that he was so seized and possessed at the time he made the conveyance. The estoppel works upon the estate, and *binds* an *after-acquired* title as between parties and privies."

So in the case of Hannon v. Christopher, 34 New Jersey Equity, 465, the court states, "that the fair result of the more recent cases would seem to be, that whenever the *terms of the deed*, or of the covenants which it contains, clearly show that it was meant to convey an absolute and indefeasible title, and not merely that which the grantor had at

the time, it will bind and pass every estate or interest which may vest in him subsequent to its execution, whether the warranty which it contains be general or special, and *although it may contain no warranty whatever.*"

"The estoppel does not depend upon the obligation of the covenant of warranty, although the books sometimes loosely say so; it depends on good faith, right, conscience, fair dealing, and sound justice. When a person competent to act has solemnly made a deed (conveying not merely his interest had at the time, but a fee simple estate) he shall not be allowed to gainsay it to the injury of those whom he has misled thereby." King v. Rea, 56 Ind., 18; Bige. on Estop., 3 ed., 333.

In this case, if Flora Lowery was living at the date of the deed by her daughters, and descent was afterward cast upon them by her death, an assertion by them of the interest so acquired would have been inconsistent with the statutory import of the conveyance previously executed by them. We therefore agree with appellees, that any title so subsequently acquired passed by estoppel to Graves and to his vendees long prior to the judgment under which appellant claims.

We are not informed of any decision of our court directly expressing the conclusion reached by us, but we regard it as intimated in the case of Harrison v. Boring, 44 Texas, 261, 262. In that case, Chief Justice Roberts draws the distinction between a mere quitclaim deed and a conveyance such as the one under consideration, which purports to convey not the chance of the title but the land itself. Citing with approval the case of Van Rensselaer v. Kearney, already emphasized by us, he contrasts the quitclaim, conveying "no more than the present interest of the grantor, and inoperative to pass an interest such as may afterward vest," with a conveyance which, though without covenant of warranty, yet purports to convey the absolute right of the land, and therefore sufficient, as we infer, to pass an after-acquired title. To the same purport are the cases of Taylor v. Harrison, 47 Texas, 460, and Richardson v. Levi, 67 Texas, 365.

Appellant, combating the contention of appellee sustained in the views here expressed, uses the following quotation from Devlin on Deeds, section 945: "In the absence of statutory enactment the general rule is, that the deed must contain a covenant of some kind to cause an after-acquired title to pass by estoppel. In some of the early New York cases it was held that an after-acquired title passed without any covenant; but these cases were subsequently overruled, and the doctrine announced that a subsequently acquired title would not, in the absence of some covenant or stipulation, pass to the grantee." To meet the rule stated, the learned author does not in our opinion mean to indicate that the deed must contain an *express* covenant. If the words of an instrument import an assertion or stipulation of title by

the grantor which he conveys, they imply a covenant which will work the estoppel. That this is the author's meaning appears from the cases cited in support of the text, in nearly all of which the instruments adjudged to be insufficient to preclude the grantor from asserting an after-acquired title are held to be mere quitclaim deeds, or are such as neither express nor imply a covenant. This meaning is further apparent from a subsequent section of the same work, as follows: "It will be admitted, that where a deed, either by recital, admission, covenant, or otherwise, distinctly shows the actual intention of the parties to have been to convey and receive reciprocally a certain estate, they are estopped from denying the operation of the deed in accordance with this intent." Dev. on Deeds, sec. 950.

Appellant yet contends, however, that in the deed to Graves there are no covenants, express or implied, except such as are referred to in article 557, Revised Statutes, viz., that the grantor has not previously conveyed, and that the property is free from incumbrances, such as taxes, assessments, and liens. We are not called upon to determine, and we do not determine, what effect, if any, this statute may have in a proper case. It is in no sense applicable here, as it was not in existence when the deed in question was executed.

Again, in Rawle on Covenants for Title, fourth edition, sections 445, 446, it is stated, in effect, that where from the deed, with or without a covenant, the intention of the parties to convey a particular estate appears, the after-acquired title will pass, for the law will not permit the grantor to defeat such intention. This doctrine, however, may not be invoked against a purchaser for value without notice. We are thus brought to another contention of appellant, viz., that he is such a purchaser. No assignment of error raises this issue. The question, however, is presented in a supplemental brief of appellant, and we deem it not improper to consider it.

Appellant's title is founded upon a judgment by consent rendered in the District Court of Cooke County, at the February term, 1883, under the following circumstances: November 25, 1882, suit was filed in the names of Hulda Lowery, Rebecca Lowery, and Basilla Maloney (formerly Lowery), imbeciles, acting through their next friend and trustee, Garrett D. Wilson, to recover the land in controversy from J. M. Lindsay, appellant herein, then holding the land under tax title. On the same day service was accepted by Lindsay. On November 23, 1882, Walton & Hill, attorneys for plaintiffs, and J. M. Lindsay entered into a written agreement, reciting that the latter was willing to purchase the land for $500, its reasonable value, and that judgment might be entered in said cause divesting all title out of the imbeciles and investing it in Lindsay on the payment of $500 and costs. In accordance with this agreement, the judgment was subsequently entered as above stated.

It is apparent that at this time appellant had no notice of the claim of appellees. No deed by the Lowery sisters was on record in Cooke County. There is, however, no evidence outside of the recitals of the judgment that he paid the purchase money or any consideration for the land. Payment of the purchase money is necessary to sustain the plea of purchaser without notice; and except in the case of conflicting equities, the burden of this proof is upon the purchaser, and the evidence offered must be other than the recitals contained in the purchaser's deed. Johnson v. Newman, 43 Texas, 629; Watkins v. Edwards, 23 Texas, 443; Hawley v. Bullock, 29 Texas, 217; Overstreet v. Manning, 67 Texas, 664.

The judgment under which appellant claims is of no greater dignity than a deed. It was made to serve the purpose of a deed, reciting the payment of $500. It affirmatively appears that it was founded exclusively upon the admissions contained in the agreement. In our opinion, this is not a case merely of conflicting equities, and it was incumbent upon appellant, to sustain his plea of purchaser without notice, to prove payment of the purchase money. At the death of Flora Lowery, the mother, in 1860, the title vesting by descent in her daughters passed by estoppel to Graves, appellees' vendor. The deed executed to Graves conveys, as already shown, "the land and land certificates granted by the State of Texas to the heirs of E. J. W. Lowery situated in * * * Cooke and other counties in Texas, among which the tract of land in question is described." The certificate for the land in controversy had therefore at that time been issued, and the land in controversy described in the deed had been located and surveyed. The legal title, at that date in the State, subsequently on the issuance of the patent in 1871 to the heirs of E. J. W. Lowery passed by estoppel to their assignees. Abernathy v. Stone, 81 Texas, 430; Adams v. House, 61 Texas, 641; Satterwhite v. Rosser, 61 Texas, 173.

Appellant can not be regarded as a purchaser for value without notice.

One of the issues made by appellant was, that on August 14, 1860, the date of the conveyance in question, the grantors, the Lowery sisters, did not have sufficient mental capacity to make the deed. The court found against appellant on this issue, and appellant in his third assignment complains of the conclusion.

This was a question of fact. We shall not undertake to detail the evidence bearing upon it. Suffice it to say, that in our opinion the finding is sustained by the evidence. Divers witnesses testified for appellant, that in their opinion the Lowery sisters were not competent to execute a deed. On the other hand, for appellees, several witnesses who had business transactions with these sisters testified, that they thought them capable of making contracts and executing deeds. It was shown, that about the time in question they executed receipts for money due them; that in 1859 they executed a deed of partition to their remain-

ing sister, Mrs. Ingles; and that in 1856 they executed a deed to the Odd Fellows Association, in Lexington, Kentucky.

Appellant's remaining assignment of error and the propositions thereunder are in effect disposed of by our remarks on his third assignment.

We think the judgment should be affirmed.

*Affirmed.*