**AMERICAN REPUBLICS CORPORATION v. HOUSTON OIL CO. OF TEXAS.**

No. 12255.

United States Court of Appeals
Fifth Circuit.

March 30, 1949.

Rehearing Denied May 23, 1949.

WALLER, Circuit Judge, dissenting.

Beeman Strong, of Beaumont, Tex., and O. A. McCracken, Jr. and Thomas Fletcher, both of Houston, Tex., for appellant.

W. H. Blades and M. C. Chiles, both of Houston, Tex., Charles S. Pipkin, of Beaumont, Tex., and B. F. Whitworth, of Houston, Tex., for appellee.

Before HUTCHESON, WALLER, and LEE, Circuit Judges.

HUTCHESON, Circuit Judge.

Alleging that a controversy [1] had arisen between plaintiff and defendant with respect thereto, Houston Oil Company, as plaintiff, brought this suit for a declaratory judgment to obtain a construction, and a determination as to the effect, of two contemporaneously executed written instruments called "conveyance" and "contract and conveyance", conveying and making provisions for the development of minerals under many tracts of land, and to obtain a money judgment for amounts paid by plaintiff to acquire an interest of $\frac{3}{35}$ asserted and established as an outstanding title to the Arriola League, one of the tracts included in the conveyance. The "contract and conveyance" for its first portion was word for word in the terms of the "conveyance". Then reciting, "the further terms of this contract are as follows", it went on to make provision for the development of the minerals, either jointly or otherwise, according to provisions carefully spelled out in it.

Looked at in large, the claim was that notwithstanding recitations [2] in them to the

---

[1] "Plaintiff alleges that a controversy has arisen between plaintiff and defendant with respect to the proper construction and legal effect of said instruments and the respective rights and liabilities of plaintiff and defendant thereunder in cases in which plaintiff, on the effective date thereof, owned an interest in the oil and gas estate in a particular tract of land less than the full fee simple title.

"Plaintiff contends that under the terms and provisions of said instruments defendant and its predecessors in title acquired an undivided one-half interest in such title to the oil and gas estate in any particular tract of land in Texas covered thereby as plaintiff owned on the effective date thereof. Defendant contends that it and its predecessors in title acquired by the terms and provisions of said instruments, an undivided one-half interest in fee simple title to the entire oil and gas estate in all tracts of land in Texas covered thereby in which plaintiff had any title whatever on the effective date thereof, regardless of whether plaintiff then owned fee simple title to the entire oil and gas estate therein or not.

"Defendant contends that in all instances in which plaintiff owned less than the entire fee simple title to the oil and gas estate in any particular tract of land in the State of Texas on the effective date of said instruments, jointly developed under the terms of said Operating Contract and Conveyance, defendant should receive a full one-half portion of all oil and gas produced from such tract, and that plaintiff is entitled to receive only such portion of same as may remain after deducting such full one-half portion from such interest in same as was owned by plaintiff at such time. Plaintiff contends that in such instances plaintiff and defendant are each entitled to receive an equal one-half portion of the oil and gas produced from such interest in the oil and gas estate in said tract of land as was owned by plaintiff on the effective date of said instruments."

[2] "Whereas, the grantor has heretofore been the owner of a large acreage of lands in the States of Texas and Louisiana, and

"Whereas, prior to Aug. 4, 1916, the grantor made sale of some of the lands above mentioned (relatively small in total quantity) * * * but * * * expressly reserving minerals in and under the land so sold, and with the right of making sale and disposition of such minerals; and

"Whereas, by deed dated Aug. 4, 1916, hereby referred to and made a part hereof, the said grantor sold to the Trust Estate above mentioned, all the lands at that time owned by it in the State of Texas and Louisiana, but in *said deed expressly reserving all of the oil and gas in and under such lands*, with perpetual rights of ingress and egress * * *; and,

"*Whereas, grantor and the Trust Estate are the owners of the mineral rights in a*

contrary, the effect of the instruments, taken together as construed on their face and by the interpretation given them by the parties, was not, as contended by defendant to convey to Republic "a full undivided one-half interest" in the minerals in and under the lands described by reference. It was, as contended by plaintiff, "to create and declare joint ownership in equal parts in Houston and Republic in such minerals as grantors owned on the date of the instruments."

Viewed in closer focus, the claim was: that an outstanding title to a $\%_{85}$ interest in the minerals under one of the tracts dealt with in the instruments had been asserted and established; that Houston had acquired that interest for the benefit of itself and Republic, and that Republic and the defendant, its successor, had refused, and were refusing, to pay any part of the cost on the ground; that by the express terms of the conveyance from Houston, Republic became the owner of a "full undivided one-half interest", and any loss on account of the adverse interest or moneys paid to acquire it must fall upon, and be borne by, Houston, its grantor.

The defense was an admission: that defendant did claim to own a full one-half interest in the minerals as set out and described in the deed to it; a denial that by the "conveyance" and the "contract and conveyance" it had acquired only an equal ownership with the plaintiff in whatever minerals plaintiff owned at the time of making the deed; and a denial, therefore, that it was in anywise liable for any moneys plaintiff had paid out to buy in the adverse title.

The cause was fully tried to the court without a jury, and, upon plaintiff's insistence that the rights of the parties could not be properly determined by a construction of the instruments, unaided by evidence, documentary and oral, as to statements made and acts and transactions occurring, both before and after the execution, the

---

*large amount of land situated in the State of Texas*, the fee in which they never owned * * *; and,

"Whereas, grantor and the Trust Estate *are the owners* of mineral rights in certain lands the fee in which (they) once owned, but in selling which the mineral rights were reserved; and

"Whereas, the Parties of the First Part, collectively but severally as aforesaid, *now being sole owners of all the oil and gas and all other minerals in and under all of such land*, in order to promote and advance the development of same, *propose now to convey to the Grantees herein, severally as hereinafter set forth, a full undivided one-half interest in and to all of the oil, gas, and mineral rights*, whether metallic or non-metallic, in the manner and under the terms as hereinafter set forth, thereby making or seeking to make more valuable the other one-half of all such not thus sold, but reserved.

"Now, therefore, in consideration of the premises and of all the terms and provisions of a certain Operating Contract and Conveyance, bearing even date herewith, between the same parties, hereby referred to and made a part hereof for every purpose, and subject always to such terms and provisions, and in consideration of the payments and expenditures made and to be made by Grantees in accordance with the terms of said Operating Contract and Conveyance (to secure which payments and expenditures in express vendor's lien is reserved on the premises conveyed), the said Grantor and said Trust Estate, here acting respectively by representatives thereunto duly authorize, have granted, bargained, sold, and conveyed, and do hereby grant, bargain, sell, and convey A Full Undivided One-Half Interest In And To All Of The Oil And Gas And Mineral Rights, Whether Metallic Or Non-Metallic, In And Under Any And All Lands Now Owned By Them Or Either of Them (expressly and only excepting lands in Navarro County, Texas), in the State of Texas and the State of Louisiana, particularly including (without excluding other not specifically described) all those certain tracts of land * *· *".

"* * *

"And the Grantor, as to oil and gas, and the Trust Estate as to all other said minerals, *do respectively warrant the title to such and to the privileges granted as against all persons claiming the same, or any part thereof, by, through or under such Grantor* and Trust Estate, respectively, except as to such titles and privileges as may have been divested out of them prior to Oct. 20, 1916, and guarantee the premises conveyed to be free of contract liens." (Emphasis supplied.)

As recited in the instrument and as in fact paid, the consideration for their execution was $500,000.00, of which half was paid in cash and the other half expended in development operations.

evidence was permitted, over defendant's objections, to take the widest range.

The defendant, insisting throughout that the instruments were unambiguous, their meaning and legal effect clear, and that this must be determined without resort to extraneous evidence, vigorously urged upon the court that, under the settled law of Texas, plaintiff, having, upon positive representations of its ownership of the whole, conveyed to defendant "a full one-half undivided interest" in it, was completely estopped from now claiming in diminution of its grant, and, contrary to its warranty, to defendant, any part of the full one-half interest it had conveyed.

Plaintiff, on its part insisting that there were other terms in the operating contract and conveyance,[3] which, taken with its purpose clause (see note 2, supra), the stated consideration, and the reservation of an equal one-half interest in themselves, and especially as aided by the interpretative evidence received in aid of their construction, completely overcame the granting words of the conveyance, prevented an estoppel arising against plaintiff, and required a judgment in its favor.

The district judge, agreeing with plaintiff all the way, made full and exhaustive findings in which, though he held that the instruments were unambiguous and that construed on their face they had the meaning and effect contended for by plaintiff, he found further that by their acts and conduct the parties had given them a practical interpretation to the same effect.

A judgment for plaintiff followed, and defendant has appealed.

Here, urging as it did below; that the suit instruments measure the rights of the parties, and they are unambiguous, their

---

3 Sec. 2. "All such lands for the purposes hereof shall be divided into units of approximately 640 acres. Each and all of such units shall have separate consideration and application hereunder. * * * After unit lines have been defined such shall not be changed without consent of parties at interest."

Sec. 3. "Prior to and until the completion of the deferred payments * * * all operations on the premises for the development of such minerals shall be conducted by the Grantees (Republic) and the interest of the Grantees shall be that of an undivided one-half, and the interest of Grantor (Houston Oil) and Trust Estate shall collectively be that of an undivided one-half * * * in and to the particular unit or units being developed; * * * and all expense and risk and liability arising out of such operations to obtain a production shall be borne, one-half by Grantees and the other half by Grantor and Trust Estate."

Sec. 4. "Accurate accounts shall be kept and rendered monthly by the Grantees, respectively, of all production of minerals of all kinds upon premises or units which may have been developed and rendered producing by the expenditure of such deferred payments. Grantees, * * * shall own and appropriate one-half thereof and the other half shall be owned and appropriated by the Grantor (Houston Oil) as to oil and gas and by the Trust Estate as to all other minerals, such oil and gas to be delivered on the surface to Grantor by Grantee or into such pipe lines available, if any, upon the unit from which such pro-

duction arises free of cost to Grantor * * *."

Sec. 6. "After completion of deferred payments (unless development shall be continued with the fund created under Sec. 8 hereof, and, in that event, after such fund is expended) title and ownership of all minerals upon all of the properties covered hereby shall be deemed fixed and final in the terms and proportions as herein provided, and parties of the first part (Houston Oil and Southwestern) or the Grantees (Republic), respectively, may proceed with operations of any one or more of the units (except as hereinafter provided) * * *. If within thirty days after such notice is given such other party shall elect to join in such operations and shall so declare in writing to the party giving notice, then all such operations thereafter on said unit shall be upon joint account and be conducted as to expense, risk, and liability, accounting and production in the same manner as provided in Sections three and four hereof. If, however, the party to whom such notice is given shall not within such time elect to join and the party giving such notice shall proceed to develop, then the right of the party to whom such notice is given to so join, and the existing interest of the party to whom such notice is given in the minerals upon such unit or units shall terminate, and all such interest shall vest exclusively in the party conducting such development operations subject only to royalty to the other party of 1/16 of all mineral products produced and saved."

meaning clear; that the vast mass of evidence, parol and documentary, received as aids to construction, was, therefore, improperly admitted over its objection and must be completely disregarded as irrelevant; and that, construed on their face and in the light of the other evidence received, they required a judgment for defendant; appellant insists that the judgment must be reversed and here rendered for it.

Agreeing with the district judge that the instruments are unambiguous and with the appellant that since this is so, and their meaning can and must be determined from a reading of them, the vast mass of evidence received in aid of their construction was improperly admitted,[4] we turn to a reading of them to determine therefrom whether they should be construed as contended for by plaintiff below, or whether, as insisted by appellant, they should be construed as contended by it.

So turning, we are in no doubt that the district judge was wrong in his conclusions:[5] (1) that defendant took, not, as the deed declared, a full undivided one-half interest in the minerals which plaintiff in its deed declared that it owned, but merely a one-half interest with plaintiff in its chance for title; (2) that the reservation of the other one-half must be construed as of equal force and dignity with the granting words; (3) that plaintiff is not estopped by its deed to assert that it did not, as it had declared that it did, convey to defendant a full undivided one-half interest; and (4) that notwithstanding its declaration of ownership, and its covenant of warranty it has the right now to assert in its favor a title in the minerals which will effect a diminution of the full one-half interest it conveyed and warranted against claim by, through, or under it.

Further, after a careful examination of it, we are of the opinion that if the whole lengthy record of things admittedly said and done on both sides be considered as admissible evidence, and looked to, there is nothing in it which supports the district judge's finding and conclusion, that the parties have placed a practical construction on the instruments which is inconsistent with defendant's, consistent with plaintiff's contentions.[6]

---

[4] Davis v. Davis, 141 Tex. 613, 175 S. W.2d 226; Lewis v. East Texas Finance Co., 136 Tex. 149, 146 S.W.2d 977; Anderson & Kerr Drilling Co. v. Bruhlmeyer, 134 Tex. 574, 136 S.W.2d 800, 127 A.L.R. 1217; Garza v. DeMontalvo, Tex. Sup.1949, 217 S.W.2d 988. Cf. Kynerd v. Hulen, 5 Cir., 5 F.2d 160; South Florida Lumber Mills v. Breuchaud, 5 Cir., 51 F.2d 490.

[5] "VII. The Court concludes, as a matter of law, that the 'Operating Contract and Conveyance' conveyed to Republic Production Company, subject to its compliance with the terms and conditions thereof, an undivided one-half interest in and to only such oil and gas rights as were owned by Houston Oil Company of Texas in the State of Texas (except in Navarro County, Texas), at the time the instrument was executed."

"IX. The Court concludes, as a matter of law, that the reservation of the 'other one-half' of the oil, gas and mineral rights, whether metallic or non-metallic, in and under any and all lands now owned by them, or either of them, appearing in the wording of the 'Operating Contract and Conveyance', must be construed as of equal force and dignity and similar in every respect to the words granting 'a full undivided one-half interest in and to' all of such oil, gas and mineral rights."

XIV. The Court concludes, as a matter of law, that plaintiff, Houston Oil Co. of Texas, did not represent, by the instruments of Nov. 15, 1916, here under consideration, that it owned all of the oil and gas in and under the various tracts of land referred to in the Decree of July 28, 1908, and that plaintiff is not estopped to say that it did not convey to Republic Production Company a one-half undivided interest in and to all of the oil and gas in and under such tracts of land and is not estopped to say that by said instruments it conveyed to Republic Production Co, an undivided one-half interest in the oil and gas rights then owned by it in the State of Texas (except in Navarro County, Texas).

[6] "XV. While the Court concludes, as a matter of law, that the 'Operating Contract and Conveyance' and 'Conveyance'. are unambiguous and that plaintiff's construction thereof, as made in this cause, is correct, nevertheless the Court further concludes, as a matter of law, that, regardless of whether same be ambiguous or unambiguous, the parties, by their acts and conduct, have placed a practical construction upon such instruments consistent with plaintiff's contention in

It is quite true that Republic thought when the purchase of the interest was made, and acted on the thought, that grantors were, as they had declared themselves to be, full owners of the title to the minerals the instruments dealt with, and that having conveyed a full one-half thereof to Republic, they remained equal owners with Republic therein, but this thought and action on Republic's part was induced by and based on grantor's positive declaration in the deed that it owned the full title, an assertion which estops Houston now to deny it.[7]

■ It is true, too, that in earlier controversies over title to other portions of the lands conveyed, the Republic was wont to cooperate with Houston in defending the suits and in contributing to the costs and outlays incurred therein and thereby.

But none of this is inconsistent with the legal position it takes here, that it acquired a full one-half interest in the properties grantors asserted they owned. It means no more than that the parties engaged in a common venture and enjoying friendly relations with each other would naturally, and did, put up a common front against the common enemy, and that in those instances where there were losses of title, Republic forebore to press its just claims against Houston.

It is true that the first time that Republic asserted a hostile right against Houston to a full undivided interest was in the Thomas suit, out of the loss of title in which this litigation arose. But this failure in the earlier cases to assert its right, of which failure plaintiff has had the full benefit, can in no way operate to deprive Republic of the right to now assert its full title in the lands. In short, its rights rests on the instruments in suit, and it has been neither claimed nor proved in this suit that Republic waived or consciously relinquished them.

■ We put completely aside then all of the evidence about negotiations before the contracts were executed, because those negotiations became integrated in the written contracts and there is no claim here for a reformation. We put aside, too, all of the things that were done after these instruments were executed, because to be effective to change the meaning of the grant to it, these things would have had to be done by Republic under circumstances which showed a waiver of, or a purpose to waive, its known rights, and we examine the instruments in suit in the light of the settled law of Texas. So examining them, we have no hesitancy in saying that Houston by asserting in its deed that it owned the minerals, and then conveying with a covenant of special warranty a full undivided one-half interest in and to them, absolutely and completely estopped itself by the deed from ever claiming to the contrary of its declaration that it did own the whole and could and would sell a full undivided one-half of them and from ever claiming against its warranty a title in diminution of the one-half it had conveyed.

In Lindsay v. Freeman, 83 Tex. 259, 18 S.W. 727, and in Corzine's Heirs v. Williams, 85 Tex. 499, 22 S.W. 399, the Supreme Court of Texas early adopted in its fullest extent the doctrine of estoppel by recitals in deeds,[8] and this adoption has never been departed from. In Lindsay's case, the court dealing with the effect of a deed without covenants of warranty, declared [83 Tex. 259, 18 S.W. 729]:

"This instrument is not a mere quitclaim or a release or a conveyance of the right, title, and interest which the grantors then had. It purports 'to convey the lands and land certificates,' and, purporting to convey them in fee-simple, it purports to convey an absolute, indefeasible title. It is such an instrument as would protect a bona fide purchaser. Richardson v. Levi, 67 Tex. [359], 364, 3 S.W. 444.

this suit and that such contention is the correct interpretation and construction of said instruments under the law."

[7] Clark v. Gauntt, 138 Tex. 558, 562, 161 S.W.2d 270; Lindsay v. Freeman, 83 Tex. 259, at pages 264–265, 18 S.W. 727; Duhig v. Peavy-Moore Lumber Co., 135 Tex. 503, 144 S.W.2d 878; Houston Oil Co. v. Village Mills Co., Tex.Com.App., 241 S.W. 122.

[8] 19 Am.Jur., Sec. 10, p. 606; Sec. 12, p. 610; Sec. 18, p. 617. 16 Am.Jur., Deeds, Secs. 340, 341, 342, and 343; 14 Tex.Jur,, Deeds, Secs. 123 and 124.

"If the grantors the Lowery sisters did not possess the estate which the deed purports to convey, nevertheless, as it was their clear intention, shown by the deed, to convey a fee-simple, they and their privies, whether in blood in estate or in law, are estopped to claim by an after-acquired title though the deed contains no warranty. The language in the deed whereby the grantors convey the fee-simple estate in the land constitutes a recital which imports an assertion by them that they are the owners in fee-simple of the land; and, having thus asserted the fact of their ownership, the grantors are estopped to deny such fact."

The district judge seems to have been of the opinion that because the deed contained a covenant not of general, but of special, warranty, that this in some way released grantor from the estoppel which the recitations of ownership in its deed would have otherwise imposed. This will not do. A deed with special warranty, indeed, as we have seen, a deed with no warranty at all, as completely estops the grantor from making a claim of title which would diminish the title of his grantee as would a deed with general warranty.

Except for the facts in Duhig v. Peavy-Moore Lumber Co., 135 Tex. 503, 144 S.W. 2d 878, that the deed was with general, instead of special warranty, and the grantor admittedly owning only one-half of the minerals, the assertion by grantor of adverse title through the attempted reservation of one-half admittedly breached the warranty when the instrument was executed, this case cannot be distinguished from Duhig's. For, as we have seen, where the grant is based on an affirmation of ownership and is a conveyance of title as opposed to a chance of title, there is an effectual estoppel at once raised to assert title in diminution of the grant whether the covenant of warranty is general or special, or, indeed there is no covenant of warranty at all.

If we paraphrase what is said in Duhig's case 135 Tex. 503, at page 508, 144 S.W. 2d 878, 880: In the instant case Houston did not acquire title to the one-half interest in the minerals it now asserts after it executed the deed containing the special warranty, but it retained or reserved it in that deed. It now insists that it should be permitted to set up and maintain that title against Republic in diminution of the "full one-half" it has conveyed Republic, we can see how closely the shoe fits and with what full force what was said there applies here.

"* * * What the rule above quoted prohibits is the assertion of title in contradiction or breach of warranty. If such enforcement of the warranty is a fair and effectual remedy in case of after-acquired title, it is, we believe, equally fair and effectual and also appropriate here.

"We recognize the rule that the covenant of general warranty does not enlarge the title conveyed and does not determine the character of the title. Richardson v. Levi, 67 Tex. 359, 365, 366, 3 S.W. 444; White v. Frank, 91 Tex. 66, 70, 40 S.W. 962. The decision here made assumes, as has been stated, that Duhig by the deed reserved for himself a one-half interest in the minerals. The covenant is not construed as affecting or impairing the title so reserved. It operates as an estoppel denying to the grantor and those claiming under him the right to set up such title against the grantee and those who claim under it." Duhig v. Peavy-Moore Lumber Co., 135 Tex. at page 508, 144 S.W.2d at page 880.

In Duhig's case, as here, what is important and controlling is not whether grantor actually owned the title to the land it conveyed, but whether, in the deed, it asserted that it did, and undertook to convey it. Thomas v. Southwestern Settlement & Development Co., 132 Tex. 413, 123 S.W.2d 290; Greene v. White, 137 Tex. 361, 153 S.W.2d 575, 136 A.L.R. 626.[9]

The emphasis which the district judge put on the fact, that the parties intended to operate jointly and that a prime consideration to the grantor was the joint development of the land for oil, no doubt caused him to overlook or unduly minimize the fact that Republic paid $250,000.00 and ad-

[9] Cf. Havard v. Smith, Tex.Civ.App., 13 S.W.2d 743; Roberts v. Chadwick, 5 Cir., 158 F.2d 374.

vanced much larger sums for operating on the faith that by the recitation in, and the granting words of, the deed, it acquired a "full one-half" interest in the minerals. Having bought in that faith induced by grantor's assurances, grantee cannot now be deprived by grantor of any part of that interest without breach of the obligation assumed by the affirmations in and by the express words of the grant.

The reason the district judge was misled into holding as he did was, we think, that such a small portion of the minerals, only one-tenth, was lost. If the situation here had been in fact and in law as it was in Duhig's case, with Houston owning at the time of the deed only, or less than, one-half of the minerals, we think he would have seen more clearly than he did that the effect of Houston's reserving an interest of one-half against its grant of one-half would have been as completely ineffective as the effort in Duhig's case was. And why not? Houston had obtained $250,000 in cash and a development contract requiring further advances of money by the grantee upon Houston's assurances that it owned title to the minerals and could convey, and was conveying, "a full undivided one-half" interest therein. Why should it now be permitted to prevail upon the claim it makes here with the result of reducing the interest granted to Republic to less than, instead of, "the full one-half" it had bought and paid for upon express assurances that that was what it was getting.

If grantor and grantee had really intended what Houston now claims they did intend, the lawyers, who represented them and who knew Texas land law intimately, would have drawn quite different instruments, free of any assurances of ownership and limited to a quit claim of chance of title. If Houston had made clear to Republic that it had nothing but a chance of title in the minerals it was conveying, and that Republic was taking pot luck with it in that chance, is it conceivable that Republic would have made the large outlays and assumed the serious obligations it did? It is certainly inconceivable that lawyers of the ability of those concerned in this trade, intending to say in the deed, "In view of pending or prospective litigations over its titles, Houston cannot convey title but only a chance of it, and Republic must share all title losses equally with Houston", would have been so inept in expressing that intention.

As a matter of fact, it stands out in this record that Houston thought it could maintain, and that it has in fact succeeded with few exceptions in maintaining, the title it affirmed that it had. It was, therefore, willing to affirm that it owned what it was selling. The grantee, secure in the knowledge that its one-half would come first and that if Houston owned as much as one-half, it could not lose, was willing to accept that affirmation and rely upon it, so willing, indeed, that it took a special instead of a general warranty. We think that it does not lie in Houston's mouth after it has received the full benefit of its bargain to say to Republic, "We took pot luck, you and I. When my title fails, I do not stand the full loss. I divide that loss with you. But I pay you back no part of what you have paid me. That is your loss. I hold fast all that you gave me."

Whether looked at in the light of the language of the suit instruments alone, or in the light thrown upon them by the undisputed facts, such a claim can not be maintained. Houston is estopped to put it up.

The judgment in support of it may not stand. It is reversed and here rendered for appellant.

WALLER, Circuit Judge (dissenting).

I think the judgment of the lower Court was correct for the reasons stated by him. I, therefore, dissent.