Elizabeth Doss BLANTON et al.,

v.

Martha BRUCE et al.

No. 11–84–159–CV.

Court of Appeals of Texas, Eastland.

April 4, 1985.

Rehearing Denied May 2, 1985.

Virgil T. Seaberry, Jr., Turner, Seaberry & Warford, Eastland, James V. Roberts, Bonney, Wade & Stripling, Dallas, for appellants.

William G. Thompson, Thompson & Cook, Breckenridge, Frank L. Jennings, Jennings, Dies, Turner & Knight, Graham, Richard J. Roach, Ridge Oil Co. (Intervenor), Breckenridge, for appellees.

McCLOUD, Chief Justice.

This is a declaratory judgment case. At issue is the ownership of a ¾ mineral interest in the Southwest ¼ of Section 124, HT & B Ry. Company Survey in Stephens County. The trial court found that the "Bruces"[1] own a ½ mineral interest in the land in question and the "Blantons"[2] own a ¼ mineral interest. The court held that the "Hudson Group"[3] owns no mineral interest in the Southwest ¼ of Section 124, HT & B Ry. Company Survey. The Hudson Group and the Blantons appeal.[4] We affirm.

Prior to April 24, 1914, R.H. Frost and wife, M.A.E. Frost, owned all of the surface and mineral estate in the Southwest ¼ of Section 124, HT & B Ry. Company Survey in Stephens County. On April 24, 1914, the Frosts conveyed to George Beggs a ¼ mineral interest in the Southwest ¼ of Section 124, HT & B Ry. Company Survey. This conveyance and this ¼ mineral interest are not in issue. The question concerns the Frosts' remaining ¾ mineral interest after the conveyance to George Beggs.

### Hudson Group's Claim

The Hudson Group claims to own a ¼ mineral interest in the Southwest ¼ of Section 124, "HT & B" Ry. Company Survey through a 1919 deed which describes

1. The parties herein referred to as the "Bruces" are: Martha Bruce, Virginia Bruce and Ernestdean Bruce Wright.

2. The parties herein referred to as the "Blantons" are: Elizabeth Doss Blanton, Sallie Stapp, Betsy McHargue, Joseph Edwin Blanton (Individually and as Trustee under the Will of Thomas L. Blanton, Jr.), Louise Blanton, Edna Blanton, Thomas L. Blanton, III (as Trustee under the Will of Thomas L. Blanton, Jr.), and William W. Blanton (Individually and as Trustee under the Will of Thomas L. Blanton, Jr.).

3. The parties herein referred to as the "Hudson Group" are: Scott W. Hudson, George C. Beggs, III and Fenton J. Baker, Jr.

4. The intervenor, Ridge Oil Company, who is producing oil and/or gas from the property has not appealed.

**910**

the property conveyed as the Southwest ¼ of Section 124, "T & NO" Ry. Company Survey.

On May 12, 1919, R.H. Frost and wife, M.A.E. Frost, executed a deed to W.C. Barnes and J.E. Barnes, Jr., purporting to convey a ¼ mineral interest in the Southwest ¼ of Section 124, "T & NO" Ry. Company Survey in Stephens County. There is no Section 124 in the "T & NO" Ry. Company Survey in Stephens County. On June 7, 1919, W.C. Barnes and J.E. Barnes, Jr. executed a deed to Walter B. Scott purporting to convey a ¼ mineral interest in the Southwest ¼ of Section 124, "T & P" Ry. Company Survey. Thereafter, in the chain of title through which the Hudson Group claims the property, the survey is described as the "T & P" Ry. Company Survey. On May 26, 1981, Scott W. Hudson and George Beggs, III, Successor Co-Trustees, executed a "correction deed" to Eastland Energy, Inc. This correction deed, describing the property conveyed as a ¼ mineral interest in the SW/4 of Section 124, "HT & B" Ry. Survey, states that it was to correct a deed dated December 30, 1980, wherein the survey had been described as the "T & P" Ry. Co. Survey. Eastland Energy, Inc. executed deeds to the Hudson Group on April 12, 1982, purporting to convey a ¼ mineral interest in the SW/4 of Section 124, "HT & B" Ry. Co. Survey. The correction deed dated May 26, 1981, is the first time that the property in issue appeared in the Hudson Group's chain of title. Prior to that date, the survey is described as either the "T & NO" or "T & P."

In their first amended counterclaim, the Hudson Group alleged that all references to surveys in their chain of title other than "HT & B" Ry. Survey resulted from a "mutual mistake"; they sought reformation of the deeds. The Hudson Group did not allege ambiguity, either patent or latent.

■ The trial court made numerous findings of fact supporting its conclusions that the Frost-Barnes deed is unambiguous, that there was no mutual mistake, and that

the Hudson Group's claim is barred by limitations and laches. These findings of fact are not challenged. Therefore, they are binding and conclusive. *City of Fort Worth v. Bewley*, 612 S.W.2d 257 (Tex. Civ.App.—Eastland 1981, writ ref'd n.r.e.). The trial court's conclusions of law based upon these unchallenged findings of fact are not attacked.

The Hudson Group failed to prove or secure findings of fact that the legal title holders were not innocent purchasers. *Amason v. Woodman*, 498 S.W.2d 142 (Tex.1973); *Teagarden v. R.B. Godley Lumber Co.*, 154 S.W. 973 (Tex.1913); 4 LANGE, LAND TITLES sec. 335 (Texas Practice 1961).

■ Furthermore, the cases cited by the Hudson Group involve deeds containing insufficient descriptions, but sufficient reference to other identifiable instruments for description. These cases are not in point. The Frost-Barnes deed contains a sufficient description on its face. The reference in the Frost-Barnes deed was that the tract was subject to an oil and gas lease "executed on the _____ day of _____ 191__" by the grantors to T.P. Coal Company. There is no indication that the reference was made for descriptive purposes. Furthermore, the reference did not sufficiently identify the oil and gas lease. See *Smith v. Sorrelle*, 126 Tex. 353, 87 S.W.2d 703 (1935).

The Hudson Group's points of error are overruled. We hold that the trial court correctly held that the Hudson Group owns no mineral interest in the property in controversy.

### *Blantons' Claim Against Bruces*

The controversy between the Bruces and Blantons concerns the effect of a deed dated September 10, 1934, signed by Fay Frost Oldham, individually and as administrator of the estate of M.A.E. Frost, deceased, to Frank Sparks. The deed recites:

(F)or and in consideration of the sum of $10.00 and other valuable consideration to me paid by Frank Sparks, receipt of which is hereby acknowledged, have granted, sold and conveyed and by these presents do grant, sell and convey unto the said Frank Sparks, of Eastland County, Texas, all that tract of land lying and situated in Stephens County, Texas, and described as the Southwest Quarter of Survey No. 124, H.T. & B. Ry. Co. land of said county, containing 160 acres more or less. It is distinctly understood and agreed, however, that the grantee herein assumes the payment of all back taxes due against said land, and that the grantor herein, Mrs. Fay Frost Oldham, reserves for herself, in her own separate right, and does not hereby convey, an undivided one-half (½) of all oil, gas and other minerals in and under said land, and of all the royalties incident thereto, and with such reservation to have and to hold the above described premises, together with all and singular the rights and appurtenances thereto in any wise belonging, except as above stated, unto the said Frank Sparks, his heirs and assigns forever.

■ At the time of this deed, the grantor owned an undivided ¾ mineral interest. The issue is whether the grantee, Sparks, through whom the Bruces acquired title, received a ½ mineral interest or only a ¼ mineral interest through the Oldham-Sparks deed. The trial court held that Sparks received a ½ mineral interest. We agree.

The question is whether the rule announced in *Duhig v. Peavy-Moore Lumber Co.*, 135 Tex. 503, 144 S.W.2d 878 (1940), applies to the Oldham-Sparks deed. The Blantons argue that *Duhig* is not controlling because the deed does not contain a "general warranty." The deed uses the words "granted, sold and conveyed . . . and by these presents do grant, sell and convey." It is not a quitclaim deed. The grantor in the deed purports to convey the

property described. The deed is a deed of conveyance without an expressed warranty.

In *Duhig*, the court held that a grantor in a "general warranty" deed purporting to convey a fractional mineral interest is "estopped" to claim title in a reserved fractional mineral interest when to do so would, in effect, breach his warranty as to the title and interest the deed purports to convey. The court stated that its decision was based on the "application of a well settled principle of estoppel." The cases cited by the court, by analogy, involve the "well established rule of estoppel against the assertion by a grantor of an *after-acquired title* in contradiction of his covenant of warranty." See *McMahon v. Christmann*, 157 Tex. 403, 303 S.W.2d 341 (1957). *Duhig* must be viewed in the context of its facts. There, with the deed containing a "general warranty," the court cites cases which use the covenant of warranty as a vehicle to support the passage of after-acquired title. See Hemingway, *After-Acquired Title in Texas—Part I*, 20 Sw.L.J. 97 (1966). The court does not say that the announced rule will apply only when the deed contains a "general warranty." In *Lindsay v. Freeman*, 18 S.W. 727 (1892), the Supreme Court held that covenants of warranty are not necessary for the passage of after-acquired title by estoppel if the conveyance purports to convey a definite estate.[5] The court said:

> If the grantors the Lowery sisters did not possess the estate which the deed purports to convey, nevertheless, as it was their clear intention, shown by the deed, to convey a fee-simple, they and their privies, whether in blood in an estate or in law, are *estopped* to claim by an after-acquired title *though the deed contains no warranty*. The language in the deed whereby the grantors convey the fee-simple estate in the land constitutes a recital which imports an assertion by them that they are the owners in fee-simple of the land; and, having thus

---

5. See Hemingway, *After-Acquired Title in Texas—Part I*, 20 Sw.L.J. 97 at 117 (1966); Dickenson, *The Doctrine of After-Acquired Title*, 11 Sw.L.J. 217 at 219 (1957).

asserted the fact of their ownership, the grantors are estopped to deny such fact.

\* \* \* \* \* \*

(I)n the case of *Hannon v. Christopher*, 34 N.J.Eq. 465, the court states that "the fair result of a more recent case would seem to be that whenever the terms of the deed, or of the covenants which it contains, clearly show that it was meant to convey an absolute and indefeasible title, and not merely that which the grantor had at the time, it will bind and pass every estate or interest which may vest in him subsequent to its execution, whether the warranty which it contains be general or special and *although it may contain no warranty whatever."* The estoppel does not depend upon the obligation of the covenant of warranty, although the books sometimes loosely say so. It depends on good faith, right conscience, fair dealing, and sound justice. When a person competent to act has solemnly made a deed conveying not merely his interest had at the time, but a fee-simple estate, he shall not be allowed to gainsay it, to the injury of those whom he has misled thereby. (Emphasis added)

Commissioner Smedley, who wrote *Duhig*, subsequently cited *Linday v. Freeman*, supra, as authority in *Clark v. Gauntt*, 138 Tex. 558, 161 S.W.2d 270 (Comm'n App.1942 opinion adopted). The court said:

The estoppel in the after-acquired title cases arises from the assertion of ownership made by the grantor in the covenant of warranty, express or implied, or in other recitals in the deed. Such assertion is a representation that the grantor owns the land or the estate or interest to which it relates, and *having thus represented the fact of ownership, the grantor is estopped to deny that fact. Lindsay v. Freeman*, 83 Tex. 259, 264, 265, 18 S.W. 727; *United States Nat. Bank v. Miller*, 122 Or. 285, 258 P. 205, 58 A.L.R. 339. (Emphasis added)

We have found only one case, *American Republics Corporation v. Houston Oil Co.*

*of Texas*, 173 F.2d 728 (5th Cir.), *cert. denied* 338 U.S. 858, 70 S.Ct. 101, 94 L.Ed. 526 (1949), which, while applying Texas Law, fully discusses the application of the *Duhig* rule to a conveyance not containing a "general warranty." The court noted that the Supreme Court of Texas in *Lindsay v. Freeman*, supra, had early adopted the doctrine of estoppel by recitals in deeds, and that this adoption has never been departed from. In holding that the estoppel by deed rationale discussed in *Duhig* was operative even though the deed did not contain a "general warranty," the court said:

The district judge seems to have been of the opinion that because the deed contained a covenant not of general, but of special, warranty, that this in some way released grantor from the estoppel which the recitations of ownership in its deed would have otherwise imposed. This will not do. A deed with special warranty, indeed, as we have seen, a deed with no warranty at all, as completely estops the grantor from making a claim of title which would diminish the title of his grantee as would a deed with general warranty.

\* \* \* \* \* \*

For, as we have seen, where the grant is based on an affirmation of ownership and is a conveyance of title as opposed to a chance of title, there is an effectual estoppel at once raised to assert title in diminution of the grant whether the covenant of warranty is general or special, or, indeed there is no covenant of warranty at all.

\* \* \* \* \* \*

In Duhig's case, as here, what is important and controlling is not whether grantor actually owned the title to the land it conveyed, but whether, in the deed, it asserted that it did, and undertook to convey it. *Thomas v. Southwestern Settlement & Development Co.*, 132 Tex. 413, 123 S.W.2d 290; *Greene v. White*, 137 Tex. 361, 153 S.W.2d 575, 136 A.L.R. 626.

Two leading authorities in the field of oil and gas law have suggested that the rule of estoppel by deed announced in *Duhig* should apply to a deed purporting to convey a definite interest without regard to the presence or scope of the warranty. HEMINGWAY, THE LAW OF OIL AND GAS, sec. 3.2, at 118 (2nd ed. 1983); Hemingway, *After-Acquired Title in Texas- Part II*, 20 Sw.L.J. 322 (1966); 1 H. WILLIAMS AND C. MYERS, OIL AND GAS LAW sec. 311.1, at 584.

The Bruces also argue that the *Duhig* rule is applicable because the Oldham-Sparks deed contains the words "grant" and "convey." [6] The statute ascribes the incidents of a "special warranty" deed to a deed purporting to "grant" and "convey." It has been suggested that the *Duhig* rule should apply to such a deed where the grantor had previously conveyed a fractional mineral interest. Barber, *Fractional Mineral Interests*, 13 Sw.L.J. 320 at 332–333. Citing *Morris v. Short*, 151 S.W. 633 (Tex.Civ.App.—Texarkana 1912, writ ref'd), the author states that arguably the word "incumbrance" in Article 1297 would embrace an outstanding mineral interest which does not result from a prior conveyance by the grantor. The court, however, in City of *Beaumont v. Moore*, 146 Tex. 46, 202 S.W.2d 448 (1947), stated that the statutory covenant against "incumbrances" is separate and distinct from the warranty of title. The court added that "it is intended to protect the grantee against rights or interests in third persons, which while consistent with the fee being in the grantor, diminish the value of the estate conveyed." TEX.PROP.CODE ANN. sec. 5.024 (Vernon 1984) (formerly TEX.REV.CIV.STAT. ANN. art. 1298) provides that an "encum-

brance" includes "a tax, an assessment, and a lien on real property." The court, in *Scates v. Fohn*, 59 S.W. 837 at 838 (Tex. Civ.App.1900, no writ), held that the statutory covenants now found in TEX.PROP. CODE ANN. sec. 5.023 (Vernon 1984) did not diminish the rule announced in *Lindsay v. Freeman*, supra. The court said:

The case of *Lindsay v. Freeman*, 83 Tex. 259, 18 S.W. 727, decides that an after-acquired title passes by such a deed; in other words, that if Henry Castro was living when Lorenzo made the conveyance to Clark, and he afterwards inherited any title thereto from his father, such title would pass by force of the deed. This is the settled law of this state, unless changed by article 633, Sayles' Rev. St., enacted in 1879. We are of opinion that this article, which prescribes the covenants that shall attach to such a deed, does not change the rule laid down in *Lindsay v. Freeman*, for the reason that the rule does not depend on the covenants in the deed. It is a rule of estoppel. As stated in the opinion in that case (citing with approval from certain authorities): "The estoppel does not depend upon the obligation of the covenant of warranty, although the books sometimes loosely say so. It depends on good faith, right, conscience, fair dealing, and sound judgment...." If we treat the deed as containing these warranties, it would be, if anything, a stronger asseveration by the grantor than without them that the grantor owned the estate conveyed.

Our holding is not based upon the statutory covenants. We hold that the *Duhig* rule is applicable to the Oldham-Sparks

---

6. TEX.REV.CIV.STAT.ANN. art. 1297 (1925) (which was in effect at the time of the conveyance), now found in TEX.PROP.CODE ANN. sec. 5.023 (Vernon 1984), provides:

From the use of the word "grant" or "convey," in any conveyance by which an estate of inheritance or fee simple is to be passed, the following covenants, and none other, on the part of the grantor for himself and his heirs to the grantee, his heirs or assigns, are implied, unless restrained by express terms contained in such conveyance:

1. That previous to the time of the execution of such conveyance the grantor has not conveyed the same estate or any right, title or interest therein, to any person other than the grantee.

2. That such estate is at the time of the execution of such conveyance free from incumbrances.

Such covenants may be sued upon in the same manner as if they had been expressly inserted in the conveyance.

deed because the deed purports to convey a definite interest in the property. Under *Lindsay v. Freeman,* supra, covenants of warranty are not necessary for the passage of after-acquired title by estoppel.

When the grantor executed the Oldham-Sparks deed, a ¼ mineral interest was outstanding. The deed purports to convey a ½ mineral interest and, at the same time, reserve a ½ mineral interest. Those claiming under the grantor (Blantons) are estopped to assert any title to the reserved minerals until the grantee (Bruces) are made whole.

The court correctly held that the Bruces own a ½ mineral interest, and the Blantons a ¼ mineral interest in the property in question.

The judgment of the trial court is affirmed.